Missouri Pacific Railway Company v. Therese Lamothe et al.

No. 2836.

1. **Reading Authorities.**—It must be left largely to the trial judges to determine what authorities and how much of each they will permit to be read to them. If in any case it is apparent that the purpose is to influence the jury rather than to inform the judge, the attempt should be promptly rebuked when it occurs. But such practice is no cause for reversal unless strong grounds be shown to believe that it improperly influenced the verdict.

2. **Rules of Railway Company—Employes.**—The court properly rejected the testimony of a witness that it was a rule of the company that every switchman should

carry a coupling stick, and that the rule was printed on the application for employment, no effort having been made to produce the original, nor to show that the injured employe ever signed or knew of such order.

3. **Same—Charges.**—The testimony to the rules of the railway company having been excluded, it was proper to refuse a charge upon such testimony.

4. **Practice—Objecting to Testimony.**—After testimony has been admitted without objection, a motion to exclude it should be left more to the discretion of the judge than when objections were made.

5. **Switch Engine.**—Testimony that the engine in use when an injury was inflicted was not so easily handled as the regular switch engine was relevant on question of due care on part of the railway company.

6. **Allegata and Probata.**—It not being alleged that the injury was caused by failure or inability to see the signals, it was not relevant to produce testimony to that effect.

7. **Side Bar Remarks.**—The practical enforcement of the rules of court against side bar remarks, etc., must be left mainly to the trial courts, and there must be strong reasons to believe that injustice has been caused by a violation of such rules before the action of the trial court will be held cause for reversal. See facts.

8. **Opinion of Witness.**—See testimony to manner in which deceased was killed *held* competent.

8. **Condition of the Weather the Night of an Accident.**—In absence of any testimony tending to show any connection between the condition of the weather and the accident, it was proper to refuse a charge to the jury that "if they believed from the evidence that the proximate cause of the accident was the darkness of the night, or the stormy condition of the weather, the plaintiff would not be entitled to recover." If such causes increased the peril from imperfect machinery or service, it would rather aggravate the negligence.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Willie, Mott & Ballinger,* for appellant.—1. The court erred in allowing counsel for plaintiff to read, over the objection of defendant, in the presence and within the hearing of the jury, accounts of verdicts rendered in similar cases in other courts. Rule 38 for Dist. Cts.

2. It was competent to prove a rule of the company, and that every employe was bound to know it before receiving employment. Railway v. Ryan, 69 Texas, 665.

3. The court erred in overruling defendant's motion to exclude all evidence to the effect that a switch engine was more suitable for the work in question than a road engine.

4. The court erred in overruling defendant's motion to strike out all evidence as to the general ease in handling switch engines as compared with road engines.

5. The court erred in allowing counsel for plaintiff to state in the presence of the jury during the examination of the witness Converse, "He (Marshall) may have been discharged for incompetency. I don't know." Rule 40 for Dist. Cts.

*Wheeler & Rhodes,* for appellees.—The several grounds of negligence, all contributing to the death of Alto Lamothe, were well sustained. First, the use by appellant of cars with defective drawheads, one of the drawheads having been in bad order and out of repair for weeks prior to the death of Lamothe, and the passage of which drawhead caused his death; secondly, the employment by appellant of a young man as engineer without the strength or ability to do the work which devolved upon him, nor to properly control his engine; and thirdly, the use by appellant of a road engine for switching purposes in the yards at Galveston instead of a switch engine, which engine Marshall was shown by the testimony to have been unable to control and handle. The charge of the court as given is not in any respect excepted to. Hence we feel that we are not called upon to cite authorities to sustain it, but in conclusion ask the court to read the case of Russell v. Minneapolis & St. Louis Railway Company, 32 Minnesota, 234, in which the court comments upon the negligence and recklessness of a railroad company in requiring a switchman to couple two cars, one having a Miller drawhead and the other a stationary drawhead. In the case cited a verdict for $10,000 damages was affirmed on appeal, and the very moderate verdict of $6000 as damages in this cause we most respectfully submit should be sustained by this court.

HENRY, ASSOCIATE JUSTICE. — The appellee Theresa Lamothe, as widow of Alto Lamothe, deceased, in her own behalf as well as in the behalf of Marie Lamothe, the mother of Alto Lamothe, prosecutes this suit against the Missouri Pacific Railroad Company for damages for negligently causing the death of said Alto Lamothe, who was at the time he met his death a switchman in the service of and employed in the yards of the Missouri Pacific Railroad Company at Galveston. The accident occurred at night, on October 12, 1886. Appellee alleges that her husband, while in the discharge of his duties as switchman, was required by the railroad company to make a coupling of two railroad cars in the service and under the control of appellant, and a part of its railway equipment; the night being dark, and the said Lamothe being wholly unacquainted with the defective drawheads of the two cars which he was required to couple; and further that the drawhead of one of the said cars which Lamothe was required to couple was at the time out of order and in a dangerous condition, and had been in such condition for months anterior to the fatal accident, and which was known to appellant, or might have been known by the exercise of reasonable diligence, but was wholly unknown to Lamothe.

The petition charges that the appellant, in disregard of the safety of its employes, was at the time employed in the making up of its trains, instead of a switch engine, a large and powerful road freight engine, which was being handled and controlled by an unskillful and incompe-

tent youth named Charles Marshall, acting as engineer; that said youth had neither the physical strength nor skill requisite for the proper discharge of the duties of an engineer; that said Marshall, for the want of the requisite skill and strength, could not properly handle and control the engine, which was known to appellant but unknown to Lamothe; that while Lamothe was in between the two cars which he was required to couple, for the purpose of making said coupling, Marshall, being unable to control the engine, backed the engine with one of the cars to be coupled with such unnecessary force and violence as to jam the two cars closely together, the defective condition of the drawheads of the two cars readily admitting of the passage of one drawhead by the other, thereby bringing the bodies of the said two cars so closely together as to smash and crush the said Alto Lamothe to death before he could extricate himself from the position of peril in which he had been placed by the wrong and negligence of appellant and without fault on his part.

The petition further charges that the two cars which Lamothe was required to couple were unfitted to be coupled together, the drawheads thereof being so constructed as to admit of the passage of one by the other when in good condition, and which danger had been greatly increased by the negligence of appellant in allowing one of the drawheads of the two cars to get out of order and remain out of order for months anterior to the killing of Lamothe. The petition charges that Lamothe had entered the service of appellant the day he was killed; that he was wholly unacquainted with the dangerous condition of the drawheads of the two cars which he was required to couple, and ignorant of the fact that one of the drawheads was out of repair; that Lamothe was also unacquainted with the incapacity and want of skill of the engineer, Marshall; that at the time of his death Lamothe was twenty-five years of age, strong and able bodied, and the sole support of his family; that he was earning at the time he was killed $60 per month wages.

The appellant answered, first, by general denial; and second, that the injuries from which Alto Lamothe died, if caused by the negligence of any one other than himself, were caused by the fellow servants and coemployes of Lamothe, for which defendant was not liable; and that Lamothe by his own carelessness and negligence contributed to the injuries from which he died, and that but for his carelessness and negligence such injuries would not have been received by him.

There was a trial of the cause, and a verdict and judgment for the appellee Theresa Lamothe for $6000.

The counsel for plaintiffs, in his opening argument upon questions of law, addressed to the court in the presence of the jury, read from Wisconsin and Texas cases—one showing a verdict for $15,000 and the other one for $10,000 against railroads. The defendant objected at the time to

their being read, on the ground that it tended to prejudice the jury. The objection was overruled, and the ruling is assigned as error.

We think it must be largely left for the trial judges to determine for themselves what authorities and how much of each they will permit to be read to them.  If in any case it is apparent that the purpose is to influence the jury rather than to inform the judge, the attempt should be promptly rebuked when it occurs.  We can see no good reason why the amounts of verdicts in other cases should have been read to the judge at that stage of the trial.  We think, however, that before any case should be reversed for that reason, a clear instance of an abuse of the rule ought to be presented, as well as strong ground to believe that the verdict may have been improperly influenced by the course pursued.  We do not think that the record before us presents a case of that character.

The defendant offered to prove "that it was a rule of the company at the time of this accident that each switchman, brakeman, and train hand should carry and use an instrument known as a coupling stick or knife, and that this rule was printed upon what is known as application form No. 139, and that this form had to be signed by every applicant for employment who obtained a position with the company in February, 1886, and that every employe was supposed to know this rule."

The court properly excluded the evidence.  No offer was made to produce the writing itself, or to show that the deceased had signed it, or that he ever had actual knowledge of the existence either of the writing or the rule.  The argumentative mode of proving the fact could not properly be resorted to until the absence of better and more direct evidence was accounted for.

A charge was requested on the same subject, to the effect that if such a rule existed and was known to the deceased, and if his failure to use such a knife contributed to his injury, plaintiffs could not recover.  The evidence having been excluded, the charge would have been improper.

As the issues were developed on the trial, we think the rule, if proved, would have been immaterial, and proof of it could not properly have exercised any influence on the decision of the cause.

Plaintiffs introduced evidence to show that switch engines were different from road engines in their construction.  It was proved that signals can be better seen from switch engines, and there was some evidence that they are more readily handled.  After such evidence had been admitted defendant moved the court to exclude it all.  The refusal of the court to do so is assigned as error.

Objections not made to the introduction of evidence when it is offered, but afterwards in the form of a motion to exclude it generally, deserve a less favorable consideration than when made at the time.  Usually some reason for the delay in urging the objection ought to be made to appear, and the decision upon such objections ought to be left more to the dis-

cretion of the trial courts than when the objections are interposed at the proper time.

No reason is shown for not making the objections when the evidence was offered, and it does not appear that it was not a proper exercise of the discretion of the court to refuse the motion because it came too late.

The evidence with regard to a switch engine being more suitable to the work in question, and with regard to its being more easily handled than a road engine, was, we think, pertinent to the issues made by the pleadings and was admissable, even if the objections to it had been made when it was offered.

A witness for plaintiffs testified, "We go altogether in switching by signals. I never move my engine to couple cars without a signal from one of the yardmen. The whole work depends upon signals. We move no engines without signals."

This evidence was objected to when it was offered, on the ground that the petition did not allege that the accident occurred through the failure or inability of the engineer to see the signals.

As we find no such allegation in the pleadings we think the objection was well taken and the evidence ought to have been excluded. The evidence was, however, immaterial, and we think could not have influenced the result. While it established the usefulness of signals it did not suggest that the injury to the deceased was caused by the omission to give them. The only evidence on that issue was that the proper signal was given, and there is no evidence in the record that it was not seen by the engineer. It is evident that the result was controlled by other issues.

A motion was made, after the evidence had been admitted without objection, to exclude "all evidence tending to show that it was not a general custom to couple a Miller to an ordinary drawhead." What we have said with regard to the motion to exclude the evidence relating to the engines applies with equal force to the manner and the substance of this objection.

Plaintiffs' attorney upon cross-examination asked a witness, "Do you know what he, Marshall, left the employ of the company for?" This was objected to by the defendant as incompetent and as hearsay evidence, and the objection was sustained by the court, whereupon the attorney remarked in the hearing of the jury, "He may have been discharged for incompetency; I don't know." Defendant took a bill of exception to the remark, and now urges it as a ground for a reversal of the judgment.

It is insisted that Rule 40 was violated, which reads: "Side bar remarks and remarks by counsel of one side not addressed to the court while the counsel of the other is examining a witness, or arguing any question to the court, or addressing the jury, will be rigidly repressed by the court."

The remark complained of seems to have been addressed to the court.

As an illustration of the propriety of the question asked it is not evident that it was not pertinent and proper. At any rate, it is to be presumed that the court will exercise the authority that it undoubtedly possesses not only to prevent prejudice to litigants by remarks addressed to itself, but in the language of the rule, "will rigidly repress" all others that are prohibited by it, or that are calculated to defeat the ends of justice. The practical enforcement of such rules must be left mainly to the trial courts, and there must be strong reasons to believe that the proper administration of the law has been defeated by their nonobservance before this court will be disposed to set aside a judgment on that account. We do not think it should be done in this case.

The plaintiffs read in evidence the following answer of a witness: "His death was caused by the Miller drawhead passing the Central drawhead and crushing him, there not being more than the space of four or five inches between the cars after the passing of the drawheads where he was standing." The defendant objected to this evidence, because it was "a supposition and surmise on the part of the witness, and hearsay." The court overruled the objections. We think that the evidence was not subject to the objections.

Defendant requested the court to charge the jury "that if they believed from the evidence that the proximate cause of the accident was the darkness of the night or the stormy condition of the weather, the plaintiffs would not be entitled to recover." The court did not err in refusing to give the charge. There was no evidence tending to show that such were the proximate causes of injury to the deceased. If such causes increased his peril from the defective machinery of defendant or the inefficiency of its servant, they still would not prevent, but would rather be added causes for a recovery.

The judgment is affirmed.

*Affirmed.*

Delivered February 14, 1890.