POSTAL TELEGRAPH CABLE COMPANY OF TEXAS v. LANGDON HARRISS.

Decided May 19, 1909, November 24, 1909.

**1.—Telegraph—Connecting Lines—Through Contract.**

Acceptance by a telegraph company of a paid message for transmission to a point beyond its line and reached only by connecting companies, without limitation of its liability to defaults occurring in a transmission and delivery by its own line, renders it liable for the negligent delay in transmission by such other lines uniting to complete the service.

**2.—Telegraph—Damages—Loss of Bargain—Evidence.**

Plaintiff who failed to purchase certain stock in a bank at Waco, Texas, by delay of defendant, a telegraph company, in transmitting his message accepting an offer of sale from the owner at Columbus, Ga., could establish his damages by proof of the value of the bank stock at Waco, without making proof of its value at Columbus.

**3.—Telegraph—Damages—Loss of Contract.**

Plaintiff, seeking to recover damages from his failure to obtain certain bank stock, by delay of defendant, a telegraph company, in transmitting his message offering to purchase it, was not required to show that the timely delivery of such message would have constituted a binding contract between him and the owner of the stock. It was sufficient to show, and this was a question of fact to be decided by the jury, that its timely delivery would have resulted in his obtaining the stock.

**4.—Evidence—Objections.**

A motion to strike out testimony is addressed to the discretion of the court, where no sufficient excuse is shown for the failure to urge the objections to its admissibility at the time the testimony was offered.

ON MOTION FOR REHEARING.

**5.—Pleading—Admission.**

Where defendant in his answer clearly pleads the same facts which have been alleged by his adversary, such pleading is to be taken as an express admission of those facts, and it is not necessary that they should be proven. Brown v. United Moderns, 39 Texas Civ. App., 343, disapproved.

**6.—Telegraph—Contract for Operation—Joint Liability.**

A contract between the Postal Telegraph-Cable Company, a New York corporation, and the Postal Telegraph-Cable Company of Texas, a Texas corporation, concerning the operation of their lines and the handling of business exchanged, considered and held to disclose such a joint enterprise between the two companies as rendered each responsible to third parties for the negligence of the other in the transmission and delivery of a message over the lines of both, originating upon one and delivered by the other.

**7.—Same.**

A provision in the contract between two telegraph companies that it is not intended thereby to make either company the agent or representative of the other, did not defeat their joint responsibility to third parties for the negligence of either in the transmission of a message over their connecting lines, where such contract disclosed a joint enterprise for the handling of such business; neither did a provision that each company assumed all the responsibility for damages occasioned by its fault, such provision being construed as governing the settlement of accounts between the two companies, and not their liability to third parties.

**8.—Telegraph Company—Negligence—Contract Limiting Liability.**

Where two telegraph companies by the contract between them are engaged in a joint enterprise for the transmission of messages over their connecting lines, neither can limit its liability for negligence to its own line by a contract with the sender of the message so restricting it.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*A. P. Wozencraft* and *D. A. Frank,* for appellants.—A telegraph company in Texas may., under the Texas statutes, make a traffic arrangement with a foreign telegraph corporation to facilitate the handling of business without the said telegraph companies thereby becoming

partners and liable for each other's negligence. Batts Rev. Stats., art. 701; W. U. Tel. Co. v. Lovely, 52 S. W., 563; W. U. Tel. Co. v. Jones, 81 Texas, 271; Smith v. W. U. Tel. Co., 84 Texas, 359; Railway v. Baird, 75 Texas, 256; W. U. Tel. Co. v. Taylor, 3 Texas Civ. App., 313.

An instruction that a contract between two telegraph companies, whereby an arrangement was made to forward telegrams over each other's lines, placed a duty upon one of said telegraph companies to transmit said telegram over the lines of the other company, when the proof showed that the plaintiff had contracted with the one company that it should be the agent of the plaintiff without liability to forward said telegram over any connecting line, is error. Same authorities, also: Railway Co. v. Jones, 37 S. W., 244; Harris v. Howe, 74 Texas, 534; Railway v. Baird, 75 Texas, 264; Hunter v. Railway, 76 Texas, 195; Smith v. Tel. Co., 84 Texas, 362; McCarn v. Railway, 84 Texas, 358; W. U. Tel. Co. v. Taylor, 3 Texas Civ. App., 313.

A telegraph company in Texas may make a traffic contract for the purpose of forwarding through messages over other and connecting telegraph lines without thereby becoming a partner to such other lines, and the fact that said telegraph company collected the through tolls would not of itself show that said company was a partner of any such connecting lines. Batts Rev. Stats., art. 701; Railway Co. v. Groves, 106 S. W., 417; Railway Co. v. Johnson, 37 S. W., 244.

Proof of a division of profits is not of itself sufficient proof of a partnership. Railway Co. v. McFadden, 91 Texas, 203; Buzard v. Bank, 67 Texas, 89; Brown v. Watson, 72 Texas, 216; Railway Co. v. Johnson, 7 S. W., 838; Friedlander v. Hillcoat, 14 S. W., 788; Altgelt v. Bank, 79 S. W., 586; Transit Co. v. Chandler, 93 S. W., 244; Heidenheimer v. Walthew, 2 Texas Civ. App., 501.

A telegraph company in this State may limit its liability by contract to errors and delays occurring on its own lines and occasioned by the negligence of itself, its agents and servants. Telegraph Co. v. Neill, 57 Texas, 289; Smith v. Telephone Co., 84 Texas, 362; Railway v. Baird, 75 Texas, 256; Telephone Co. v. Simmons, 93 S. W., 688; Telephone Co. v. Lovely, 52 S. W., 564; Railway v. Groves, 106 S. W., 417.

A provision on the back of a telegraphic message to the effect that the telegraph company is made the agent of the sender without liability to forward said message over any connecting line when necessary to reach its destination is valid and is binding upon the party sending the telegram. Railway v. Johnson, 37 S. W., 244; Harris v. Howe, 74 Texas, 534; Railway v. Baird, 75 Texas, 264; Smith v. Telegraph Co., 84 Texas, 362; Telephone Co. v. Taylor, 3 Texas Civ. App., 313.

There being no evidence of the value of said stock in Columbus, Georgia, a verdict for damages based upon the difference between the price at which said stock was offered and its market value in any other place must be set aside. Woldert v. Arledge, 4 Texas Civ. App., 692; Brewster v. Telegraph Co. (Ark.), 47 S. W. 561; Welden v. Meat Co., 65 Texas, 489; Telephone Co. v. Hall, 31 L. Ed. (U. S.), 483; Telephone Co. v. Fellmar (Ark.), 22 S. W., 917.

An alleged acceptance of an offer to sell stock which says, "Send stock First National Bank; please wire confirmation," when the said "First National Bank" is nearly a thousand miles from the party who made the offer, and there would be expenses for sending the stock and returning the proceeds, and it would occasion a delay so to do, is not an acceptance in the terms of the offer, but is a counter offer, and will not support a suit for specific performance of the contract; nor will a telegraph company be held liable for delay in delivery of such a counter offer as though it were an acceptance. Flomerfelt v. Hume, 11 Texas Civ. App., 30; Washington v. Rosario M. & Mill Co., 67 S. W., 465; 28 Texas Civ. App., 430; Summers v. Mills, 21 Texas, 86; Bank v. Hall, 101 U. S., 43; James v. Darby, 40 C. C. A., 345; Sawyer v. Brossart, 67 Iowa, 678; s. c., 56 Am. Rep., 371; Baker v. Holt, 56 Wis., 100; Minneapolis v. Columbus, 119 U. S., 152; Eliason v. Henshaw, 4 L. ed. (U. S.), 557; Carr v. Duval, 10 L. ed. (U. S.), 364; Northwestern Iron Co. v. Meade, 21 Wis., 477.

Statements passed between plaintiff and a person not a party to the suit are immaterial, irrelevant and not admissible against the defendant. Railway v. Moore, 69 Texas, 160; Railway v. Ivy, 71 Texas, 417; Wilkins v. Ferrell, 10 Texas Civ. App., 231; Tucker v. Hamlin, 60 Texas, 176; Fox v. Willis, 60 Texas, 376; Mayfield v. Cotton, 37 Texas, 233.

A letter from the sendee of a telegram to the sender, written after the said telegram was sent and delivered, containing evidence against the interest of the telegraph company, is ex parte testimony, which said telegraph company has a right to test by cross-examination, and is inadmissible as original evidence. Byer v. Wallace, 87 Texas, 509, 512; Nunn v. Mayes, 9 Texas Civ. App., 366; Ellis v. Randle, 60 S. W., 465; 24 Texas Civ. App., 475; Largent v. Beard, 53 S. W., 91.

*W. B. Carrington* and *Eugene Williams,* for appellee.—The express contract between appellant and appellee, evidenced by the written and verbal agreement between them before the message left Waco on January 28, 1907, bound appellant to transmit the message to Columbus, as charged by the trial Court in the instruction to the jury of which appellant's first assignment of error complains. In the absence of stipulation to the contrary appellant is liable. Gulf, C. & S. F. Ry. v. Baird, 75 Texas, 264; Gulf, C. & S. F. Ry. v. Insurance Co. of North America, 28 S. W., 239-40. No pleadings having been introduced as evidence in this case, the pleadings are not proof and in no event could be evidence unless introduced in evidence as such, so as to give the opposite party notice and an opportunity to object and reserve proper bills of exception. Cameron v. Realmuto, 45 Texas Civ. App., 305; Cook v. Hughes, 37 Texas, 343. Even if defensive pleadings are offered as evidence, a general denial will prevent them from being introduced as admissions. Silliman v. Gano, 90 Texas, 646; Duncan v. Mogette, 25 Texas, 245; Hynes v. Packard, 92 Texas, 44; Lewis v. Crouch, 85 S. W., 1010; Brown v. United Moderns, 39 Texas Civ. App., 343; Bauman v. Chambers, 91 Texas, 108.

The contract of October 19, 1906, between the two postal companies created a relation which made it the duty of appellant to transmit ap-

pellee's message to Columbus, as charged by the trial court in the instruction to the jury, of which appellant's first assignment of error complains. Chicago, R. I. & T. Ry. Co. v. Halsell, 35 Texas Civ. App., 126; Buie v. Chicago, R. I. & P. Ry. Co., 95 Texas, 54; International & G. N. R. Co. v. Anderson, 3 Texas Civ. App., 8; Gulf, C. & S. F. Ry. v. Ins. Co. of North America Co., 28 S. W., 239; Railway Co. v. Johnson, 37 S. W., 244. See discussion of liability of connecting carriers as joint actors under contract. Gulf, C. & S. F. Ry. v. Baird, 75 Texas, 263. Even if the telegraph blank had provided the appellant was appellee's agent, it would not relieve appellant of liability. Western U. Tel. Co. v. Seals, 45 S. W., 964.

It being in evidence there was no market value for the stock in Columbus and at no other place than Waco, and were this not true, the circumstances being such as to show that there could not be a market value at Columbus, the attendant facts would raise the inference there was no market value there, under the analogy of the rule *res ipsa loquitur,* and testimony of such value at Waco was admissible and, in any event, such testimony was admissible because it was appellee's right to buy in the open market the same amount of stock, and failing to do so, to recover the difference between the contract price and the lowest price at which he could have bought it in the open market, and as appellee's message notified appellant that he expected to realize whatever benefits were to accrue to him at Waco, the lowest price at which he could have gone into the market at Waco and bought the same amount of stock was a material inquiry. Western U. Tel. Co. v. Hirsch, 84 S. W., 394; Houston & T. C. Ry. v. Williams, 31 S. W., 559; Downey v. Hatter, 28 S. W., 34. Appellee seeking and expecting to realize on the stock at Waco is entitled to compensation for the damage done by appellant's negligence in preventing his realizing its value at Waco. Gulf, C. & S. F. Ry. v. Eddins, 7 Texas Civ. App., 116. Market value at destination: Steinlein v. Blaisdell, 40 S. W., 202; Day v. Cross, 59 Texas, 595; Texas, etc., Ry. Co. v. Sims, 26 S. W., 635; Gulf, C. & S. F. Ry. v. Stanley, 89 Texas, 44. The measure of damage for loss of goods by common carrier is market value at destination: Railway Co. v. Staton, 49 S. W., 279; Texas, etc., Ry. Co. v. Sims, 26 S. W., 635. Duty to minimize damage by purchasing other stock: Houston, etc., Ry. Co. v. Williams, 31 S. W., 559; Gallagher v. Jones, 129 U. S., 193; 5 Am. and Eng. Ency. of Law, 388, 389, 390. Market value, what can be replaced for: 24 Am. and Eng. Ency. of Law, 1156 (6). Rule *res ipsa loquitur:* Houston, E. & W. T. Ry. Co. v. Roach, 114 S. W., 422.

KEY, ASSOCIATE JUSTICE.—Langdon Harriss brought this suit against two defendants, one designated the Postal Telegraph Cable Company and the other designated the Postal Telegraph Cable Co. of Texas, seeking to recover damages on account of alleged delay and negligence in transmitting and delivering a telegram sent by the plaintiff from Waco, Texas, to E. P. Dismukes at Columbus, Georgia.

The Postal Telegraph Cable Company filed no answer, and judgment by default was rendered against it. The Postal Telegraph Cable Company of Texas filed an answer to the effect that by the terms of the

contract under which it received the message it was stipulated and agreed that, if it was to be transmitted over any other line, that defendant would act as agent for the plaintiff in delivering it to the other line, and was not liable for default or negligence on the part of such other line. It was also alleged that the defendant's line did not extend all the way to Columbus, Ga., and that the message was delivered by the defendant Postal Telegraph Cable Company of Texas to its codefendant Postal Telegraph Cable Co. at Memphis, Tenn., and transmitted from there by the latter company.

The plaintiff filed a replication to the defendant's answer, consisting of a general demurrer and a special plea, setting up certain facts which he alleged rendered the Texas Cable Company liable for the negligence of the other defendant.

There was a jury trial, which resulted in a judgment in favor of the plaintiff for $350, and the Postal Telegraph Cable Company of Texas has appealed.

Though not constituting all the testimony, the following agreed facts were put in evidence:

"It is agreed between the plaintiff herein and the Postal Telegraph Cable Company of Texas that a statement of a part of the facts in this case is made as follows:

"That on January 28, 1907, Langdon Harriss, the plaintiff herein, at Waco, Texas, and W. B. King & Company at Houston, Texas, were each in possession of an offer on the part of E. P. Dismukes, at Columbus, Georgia, to sell thirty-five shares of the stock of the First National Bank of Waco, Texas, at $230 per share; that said Langdon Harriss was in possession of this offer to sell him the said thirty-five shares at the price aforesaid on January 28, 1907, at an hour as early as 10 o'clock a. m.; that at 10 o'clock a. m. on January 28, 1907, the said Langdon Harriss delivered to the Postal Telegraph Cable Company of Texas, a defendant herein, a telegram addressed to E. P. Dismukes, care of the Georgia Manufacturing Company, Columbus, Ga., stating: 'Offer accepted. Send stock First National Bank. Please wire confirmation,' and signed, 'Langdon Harriss;' that said telegram was correctly sent from Waco in the order of its receipt, to Dallas at about eight minutes past ten o'clock on January 28th, 1907; that said telegram was correctly received in the Dallas office of the Postal Telegraph Cable Company of Texas at about 10:10 a. m., January 28, 1907, and sent from said Dallas office in the order of its receipt by said Postal Telegraph Cable Company of Texas at about 10:50 a. m. on the same day and correctly delivered to the Postal Telegraph Cable Company, in Memphis, Tennessee, on the same day at 10:51; that said telegram was forwarded by the Postal Telegraph Cable Company from Memphis, Tennessee, to Birmingham, Alabama, at 2:13 p. m. January 28, 1907, and correctly delivered there to the Postal Telegraph Cable Company; that said telegram was forwarded from Birmingham, Ala., by the Postal Telegraph Cable Company at 2:20 p. m. January 28, 1907, to Columbus, Georgia, and was correctly received at 2:25 p. m. on the same day by the Postal Telegraph Cable Company, at Columbus, Georgia, and thereafter by it, on the same day at 2:30 p. m., was de-

livered to said Dismukes; that the said telegram related to the said thirty-five shares of stock.

"That on January 28, 1907, the said Wm. B. King & Company delivered to the Postal Telegraph Cable Company of Texas, at Houston, Texas, a telegram addressed to said E. P. Dismukes, Columbus, Georgia, care Georgia Manufacturing Company, in these words: 'Letter received. Accept. Forward stock draft attached. Answer; confirm sale.' Signed, 'Wm. B. King & Co.;' that the said telegram referred to the said thirty-five shares of stock; that the said last-named telegram was so delivered at 10:40 a. m. January 28, 1907; that said Postal Telegraph Cable Company of Texas correctly, in the order of its receipt, transmitted the said telegram to New Orleans, Louisiana, on the same day it was received, and there delivered it at 11:03 a. m. to the Postal Telegraph Cable Company; that on the same day the Postal Telegraph Cable Company, at 12 o'clock noon, forwarded the said telegram and correctly delivered the same at Birmingham, Alabama, to the Postal Telegraph Cable Company; that said telegram was correctly received by the Postal Telegraph Cable Company at Birmingham, Alabama, about 12 o'clock and eleven minutes p. m. January 28, 1907, and on the same day at 12 o'clock and forty-two minutes p. m. correctly forwarded the same from Birmingham to E. P. Dismukes at Columbus, Georgia, where it was received in its office at about the hour of 12:46 p. m. and was delivered by it to the said E. P. Dismukes at the hour of 1 o'clock p. m., who answered, confirming sale to King & Company.

"That neither the servants nor employes of the Postal Telegraph Cable Company of Texas, who handled or were cognizant of the said telegram from Langdon Harriss, knew on January 28, 1907, anything of the said telegram from W. B. King and Company; nor did the servants or employes of the Postal Telegraph Cable Company of Texas, who handled or were cognizant of the said telegram from W. B. King & Co., know anything on January 28, 1907, of the said telegram from Langdon Harriss.

"It is further agreed that either party may introduce other evidence upon the trial of this case."

There was testimony sufficient to show that if Dismukes had received the plaintiff's telegram before he received the one from King & Company, he would have obtained from Dismukes his bank stock; and that as a result of his failure to do so, he has been damaged to the extent of $350, the amount awarded him by the verdict.

The trial judge, after explaining to the jury the nature of the case, and telling them that the burden of proof rested upon the plaintiff, among other things gave the following instructions:

"3.    The defendant Postal Telegraph Cable Company has failed to answer herein, and plaintiff has taken an interlocutory judgment by default against said company, and you will find for the plaintiff against said defendant and assess his damages as hereinafter instructed.

"4.    As to the defendant the Postal Telegraph Cable Company of Texas, you are instructed that the relation between the two defendants was such on January 28, 1907, that when plaintiff contracted with A. G. Steele to transmit the message to Dismukes, it became the duty

of the defendant Postal of Texas to use ordinary care—that is, such care and diligence as a reasonably prudent person would have used under the same or similar circumstances—to transmit the message with reasonable promptness from Waco to Columbus, Georgia, and there deliver same to said Dismukes, and it became the duty of the other defendant to use ordinary care to transmit the message with reasonable promptness from Memphis to Columbus; and a failure, if any, on the part of either defendant to use such ordinary care to transmit and deliver said message with reasonable promptness would render the Postal Telegraph Cable Company of Texas liable to plaintiff for whatever damages, if any, he may have suffered by reason of such failure, if any.

"Now, if you believe from the evidence that the defendants, the Postal Telegraph Cable Company and the Postal Telegraph Cable Company of Texas, or either of them failed to exercise ordinary care to transmit and deliver said message to said Dismukes with reasonable promptness, and that by reason of such failure, if any, plaintiff failed to secure from said Dismukes the purchase of said stock, and that had defendants exercised such ordinary care in the transmission and delivery thereof, that said Dismukes would have sold said bank stock to plaintiff, and that by reason of such failure, if any, on the part of the defendants or either of them, to so transmit and deliver the same, that plaintiff had suffered any damage, then if you so find you will find for the plaintiff against the Postal Telegraph Cable Company of Texas also.

"6.  If you find for the plaintiff, the measure of his damage would be the difference, if any, in the price at which he could have purchased said stock from said Dismukes and the reasonable market value thereof at that time, and if you find for plaintiff you will assess his damage at the difference, if any, between the price at which he would have purchased said stock, if at all, from said Dismukes, and the lowest price at which he could have gone into the market and bought said amount of stock for by the exercise of reasonable diligence."

The first assignment of error assails the fourth paragraph of the charge, the contention being that in this case appellant, the Postal Telegraph Cable Company of Texas, was under no obligation to transmit the telegram further than its own line extended, which was to Memphis, Tennessee, and that it was not responsible for delay or negligence on the part of the other defendant in transmitting the telegram from Memphis, Tennessee, to Columbus, Georgia.  A contract relating to traffic arrangements between the two defendants was introduced in evidence, and it is insisted by counsel for appellant that it does not disclose a partnership or such other relations between the two companies as would justify the fourth paragraph of the court's charge.  Counsel for appellee controvert this contention, but we find it unnecessary to decide the point.  We are of opinion that the uncontroverted testimony shows that appellant made a thorough contract, by which it was obligated to transmit and deliver the message to Dismukes at Columbus, Georgia.  The telegram was introduced in evidence, and reads as follows:

"Telegram.

"The Postal Telegraph Cable Company of Texas.

"This company transmits and delivers messages subject to the terms and conditions printed on the back of this blank.    S. M. English, General Manager.

"Counter Number.            Time Filed.            Check.

"15 Da. S. O.            10 a. m.            10 X Due.

"Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to.

"10:08 A.                    "Waco, Texas, 1/28, 1907.

"To E. P. Dismukes, c/o Georgia Manufacturing Co.,
                    "Columbus, Ga.

"Offer accepted.    Send stock First Nat'l Bank.    Please wire confirmation.                    "Langdon Harriss.

"The Postal Companies reach all important points in the United States and British America, and via Commercial Cables, all the world."

While this document indicates that there may have been certain stipulations printed on the reverse side of it, the statement of facts does not show what such stipulations were; in fact, it does not show that anything was printed or written on the reverse side.    Hence we conclude that appellant's acceptance of the message for the consideration agreed upon constituted a through contract, and obligated appellant to transmit and deliver the message to Dismukes at Columbus, Georgia; and if it employed the services of any other company or person in the performance of the contract, it is liable for the negligence or default of such other company or person.    It is true that appellant pleaded a contract alleged to limit its liability to its own line, and it is also true as to that plea that the plaintiff did not file a general denial, and it is likewise true that in his replication to the plea he stated the facts substantially as set up in the defendant's answer.    This, however, did not dispense with proof of the stipulations referred to.    In this State it is permissible for a litigant to file inconsistent pleas (Bauman v. Chambers, 91 Texas, 108), and it is provided by article 1193 of the Revised Statutes that "It shall not be necessary for the plaintiff to deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied unless expressly admitted.    In Brown v. United Moderns, etc., 39 Texas Civ. App., 343, it was held by the Court of Civil Appeals for the Second District that a plea by the plaintiff setting up the same facts that had been alleged by the defendant did not constitute an express admission of such facts.    Of course, such a plea does admit the existence of the facts therein stated, but the admission is an implied and not an express admission.    By reason of the statute referred to, the case must be considered as though the plaintiff had filed a general denial, and he not having expressly admitted the special contract pleaded by the defendant, and

the statement of facts failing to contain proof of such contract, the case must be disposed of by this court upon the assumption that no such contract existed. This disposes of the assignments of errors extending from 1 to 8.

Under several assignments and in various forms appellant urges the contention that appellee was not entitled to prove the value of the bank stock at Waco, Texas, and was not entitled to recover, because there was no proof as to the value of such stock at Columbus, Georgia. We overrule the contention referred to and hold no error was committed in that respect.

We also hold that it is immaterial whether or not there was a binding contract between Dismukes and the plaintiff for the sale of the bank stock. This is not an action against Dismukes for specific performance or for breach of contract, but is a suit against the defendant to recover damages on account of negligent delay in transmitting and delivering plaintiff's telegram to Dismukes, the plaintiff alleging that if the defendant had not breached its contract he would have obtained from Dismukes the bank stock referred to. Whether or not he would have obtained the bank stock, if the defendant had complied with its contract, was a question of fact to be decided by the jury; and, in order to prove such fact, the plaintiff was not required to show that the timely delivery of his message to Dismukes would have constituted a binding contract between him and Dismukes. Without constituting such a contract it might have resulted in his obtaining the bank stock.

Certain objections are urged against the charge of the court, but they are regarded as untenable and the assignments presenting such questions are overruled. We also hold that no error was committed in the refusal of requested instructions and overrule the assignments relating thereto.

The plaintiff introduced in evidence a telegram from E. P. Dismukes to him, stating that the plaintiff's telegram was received too late, and that he had sold the stock to the Houston party. The plaintiff also introduced in evidence a letter from E. P. Dismukes to him, which reads:

                              "Columbus, Georgia, January 28, 1907.
"Mr. Langdon Harriss, Waco, Texas.

"Dear Sir: I have your telegram of this date, saying 'Offer accepted. Send stock First National Bank. Please wire confirming.' To which I replied, 'Telegram received too late. Stock sold to Houston party.'

"The telegram was Houston No. 44, and was received by me at 12:46, just before leaving for lunch. The telegram from you was No. 65 and received at 2:25 p. m.

"I am very sorry your telegram was not received first, as having sold you part of my stock I felt desirous that you should have the balance. However, it is your own fault, if any one is to blame, for the best price you ever offered me was $220, and that since the first of January. I regret though that your telegram was not received before the one from Houston.

"With kindest regards to Mr. Rotan and Mr. Gribble, I remain,
"Very truly,
"E. P. Dismukes."

The introduction of the telegram as evidence was objected to by the defendant as irrelevant and immaterial, and the action of the court in overruling that objection is assigned as error. We overrule the assignment, because the telegram was material. It tended to show delay on the part of appellant, and that if the telegram had been delivered in time appellee would have acquired the bank stock. When the letter was offered in evidence appellant objected to it substantially upon the same ground—that of immateriality—which objection, for the reason already stated, was properly overruled. After the letter had been read to the jury the defendant moved the court "to strike the said letter from the record, for the reason that it contains original testimony against the defendant unsworn to; is a transaction between third parties and of which the defendant company had no knowledge or notice, and by which it could not be bound, and the said defendant had not had an opportunity of cross-examining Mr. Dismukes as to what was stated in the said letter," which motion was by the court overruled, and both rulings in regard to the letter are assigned as error and presented for decision.

Of course, the letter was material, as it tended to show delay in transmitting and delivering the plaintiff's message, and that if such delay had not occurred the plaintiff would have obtained the bank stock. As to the motion presented after the letter had been introduced in evidence, it will be observed that it did not, in terms, request the court to instruct the jury that the letter was not competent testimony, and to withdraw it from their consideration, but, doubtless, such was the intention of the motion; and it may be assumed that it was so considered by the trial court. The rule is that when no tenable objection is presented to the introduction of testimony, and after it has been placed before the jury, the court is requested to withdraw such testimony, such request is addressed to the discretion of the court, and the party making the request should excuse himself for not urging as an objection to the introduction of the testimony the objections urged on motion to withdraw it. (Missouri Pac. Ry. Co. v. Lamothe, 76 Texas, 223; Hatzfeld v. Walsh, 55 Texas Civ. App., 573. The objections urged in the motion to strike out the letter could have been urged to its introduction, and it is not shown that appellant offered any excuse for the failure to urge such objections when the letter was offered as testimony, and before it was read to the jury. Such being the case, we are not disposed to hold that the trial court abused its discretion in overruling the motion to withdraw the testimony. In making this disposition of the matter referred to, we are not to be understood as holding that any of the objections urged in the motion to strike out were tenable.

There is testimony in the record which supports the verdict of the jury upon all the issues of fact which were submitted to and decided by them. This embraces all the questions which we deem it necessary to discuss in this opinion.

No reversible error has been pointed out and the judgment is affirmed.

*Affirmed.*

### OPINION ON MOTION FOR REHEARING.

This motion has received careful consideration, and we have reached a conclusion that this court fell into error when it held that the stipulation on the reverse side of the written message could not be considered because it does not appear from the statement of facts that it was put in evidence. The defendant pleaded the existence of the stipulation referred to and to the effect that it limited its liability to its own line and relieved it from liability on account of delay or negligence by any other line over which the message might be sent. As stated in the original opinion, the plaintiff in a supplemental petition set up substantially the same facts as to what was printed upon the reverse side of the message. By force of article 1193 of the Revised Statutes, the burden rested upon the defendant to make the proof of the stipulation referred to unless it. was expressly admitted by the plaintiff. In our former opinion we held that the mere setting out of the stipulation referred to in the plaintiff's supplemental petition, while constituting an implied admission, did not constitute an express admission. In reaching that conclusion we were strongly influenced by the language of the Court of Civil Appeals for the Second District, in Brown v. United Moderns, etc., 39 Texas Civ. App., 343. Upon further consideration we have reached the conclusion that we committed error in that respect. We are now of opinion that such rigid and narrow construction should not be placed upon the statute referred to, and that it should be held that, when a party has, in clear and unmistakable terms, alleged in his pleading the same facts which have been alleged by his adversary, that he thereby expressly admits the existence of such facts.

This ruling renders it necessary for us to consider and construe the contract then in force relating to traffic arrangements between the two defendants, and determine whether or not it shows such relations between them as will justify the fourth paragraph of the court's charge. That contract reads as follows:

"This agreement, made and entered into this 19th day of October, 1906, by and between the Postal Telegraph Cable Company, a corporation duly organized and existing under the laws of the State of New York, party of the first part, and the Postal Telegraph Cable Company of Texas, a corporation duly organized and existing under the laws of the State of Texas, party of the second part, hereinafter referred to as the Postal Company and the Texas Company, respectively, witnesseth:

"Whereas, the Postal Company and its allied companies have in operation a system of telegraph lines extending throughout the United States—except that part thereof covered by the lines of the Texas Company as hereinafter specified; and

"Whereas, the Texas Company has a system of telegraph lines extending through the States of Texas, Louisiana (west of the Mississippi River to New Orleans) and Arkansas, and in Oklahoma Territory and

Indian Territory, and in Missouri and Kansas south of the existing lines of the Postal Company at St. Louis, Missouri; Kansas City, Missouri; Emporia, Kansas; Wichita, Kansas, and Dodge City, Kansas (said lines being east of the one hundredth meridian of longitude), and extending to a connection with the Postal Company's offices at Memphis, Tennessee, New Orleans, Louisiana, and Wichita, Kansas; and

"Whereas, the parties hereto as independent connecting lines desire a transfer of commercial and other telegraph business between the points composing their respective systems.

"Now, therefore, in consideration of the covenants and agreements hereinafter specified to be performed and observed by each of them, and for other valuable considerations moving from each of said companies to the other, receipt whereof is hereby acknowledged by each of them, the parties hereto agree with each other as follows:

"First: Each of the parties hereto, since neither of them has telegraph facilities in the territory occupied by the other, and since to reach such territory it must avail itself of some independent connecting line, agrees to transfer to the other at Memphis, Tennessee, or at New Orleans, Louisiana, or at Wichita, Kansas, for further transmission by the other as an independent connecting line, all telegraph and cable business that it (the party with which the business originates) may be able to obtain or control destined to points on the lines or connections of the other party, including all cablegrams and all telegraph business which shall come to it from any other connecting lines but this contract is not intended to have such effect as to make either of the parties hereto the agent or representative of the other, nor shall it be so construed.

"Second: The Postal Company agrees to furnish in its offices at Memphis, Tennessee, and New Orleans, Louisiana, the operators necessary in said offices for the proper transmission and receipt upon the Texas Company's wires to and from the offices of the Texas Company of the transferred telegraph messages herein provided for and, also, of telegrams between said cities and offices on the lines of the Texas Company. The Postal Company agrees to also furnish in said cities the messengers and other employes and facilities necessary for the prompt and proper collection and delivery of all telegraph business between said cities and points on the lines of the Texas Company; and the Texas Company in consideration thereof hereby agrees to pay to the Postal Company for maintenance and operating (including the cost of main battery) of the Postal Company's offices in the cities of Memphis, Tennessee, and New Orleans, Louisiana, which the receipts accruing to the Texas Company at the said cities, respectively, shall bear to the receipts therein accruing to the Postal Company. By 'receipts' as last above used is meant receipts from telegrams originating at or destined to New Orleans or Memphis, as the case may be.

"Third. It is mutually agreed that the wires of the Texas Company may be connected at said transfer points to such wires of the Postal Company as the latter company may designate, so as to form a direct circuit or circuits between offices on the lines and connections of the Postal Company and offices on the lines of the Texas Company, at such times and in such manner as may be designated by the Postal

Company, it being understood and agreed that all telegrams handled on said direct circuits between offices on the lines of the one company and offices on the lines of the other company shall be considered as having been transferred at said transfer points.

"Fourth. (1) It is understood and agreed that all tolls and revenue on telegrams handled between offices of the Texas Company along its own lines shall be fixed by and shall belong to the Texas Company, and all tolls and revenues on telegrams handled between offices of the Postal Company along its own lines shall be fixed by and shall belong to the Postal Company.

"The offices at Memphis, Tennessee, and at New Orleans, Louisiana, shall be offices of the Postal Company, but all tolls and revenues on telegrams between Memphis, Tennessee, and New Orleans, Louisiana, respectively, and points on the Texas Company's lines, shall be fixed by and belong to the Texas Company, and all tolls and revenues on telegrams handled between said cities and points on the lines and connections of the Postal Company shall be fixed by and shall belong to the Postal Company.

"(2) The total tolls on transferred through telegrams shall be computed by adding together the respective local tolls of the parties hereto from the point of origin to the transfer point and from the transfer point to destination in each case, except when the parties hereto shall mutually agree upon a lower through rate than the rate so obtained; provided, however, that nothing in this contract shall prohibit the contracting parties from making by mutual agreement such rates on through telegrams as will enable them to meet competition on said through telegrams, and provided further that if it shall be necessary for any message to pass over the lines of one or more companies other than those of the parties to this contract, then the local tolls of such one or more other parties shall be added to the aggregate of the local tolls of the parties hereto in computing the total through tolls on said message.

"(3) Tolls on said transferred telegrams shall be divided as follows:

"After deducting from the total tolls on transferred telegrams (including commercial messages, market quotations, newspaper matter and cablegrams) destined to or originating at offices on the lines and connections of the Postal Company located west of the Mississippi river or south of the Potomac and Ohio rivers, and also the cities of Washington, D. C., and Cincinnati, O., the proportion of said total tolls that the Postal Company must pay or account for to other connecting lines, the balance of said total tolls shall be equally divided between the parties hereto one-half to each, except as otherwise herein specifically provided.

"(4) After deducting from the total tolls on transferred telegrams (including commercial messages, market quotations, newspaper matter and cablegrams) originating at or destined to offices on the lines and connections of the Postal Company east of the Mississippi river and north of the Potomac and Ohio rivers, not including said cities of Cincinnati and Washington, the proportion of said total tolls that the Postal

Company must pay or account for to other connecting lines, the Texas Company shall have forty percent (40%) and the Postal Company sixty percent (60%) of the balance of said total tolls, except as otherwise herein specifically provided.

"(5) It is understood and agreed specifically that offices on the lines of the Pacific Postal Telegraph-Cable Company, the North American Telegraph Company, and the Canadian Pacific Railway, excepting connecting offices between the Postal Company and the said Pacific Postal, North American and Canadian Pacific Railway, are not to be considered as offices on the lines of the Postal Company herein referred to. The division of tolls between the parties hereto and the Pacific Postal, North American and Canadian Pacific Railway shall be as follows:

"The Texas Company shall have thirty-three and one-third percent (33 1-3%) of the total tolls on telegrams between points on its lines and points on the lines of the North American Telegraph Company; thirty-three and one-third percent (33 1-3%) of the total tolls on telegrams between points on its lines and points on the lines of the Canadian Pacific Railway Company in British North America; and sixteen and one-quarter percent (16¼%) of the total tolls on telegrams between points on its lines and points on the lines of the Pacific Postal Telegraph-Cable Company.

"Fifth: The Texas Company and the Postal Company agree each to render to the other monthly statements of all business transacted between the offices of said companies, respectively, and each party agrees to pay over to the other promptly at the end of each month any balance that may then be due and payable under the terms of this agreement.

"Sixth: (1) Each of the parties hereto hereby assume all responsibility for damages resulting from errors, delays, nondelivery or other defaults in the transmission of telegraph business under this agreement that may be occasioned by the fault of its own employes (and in case the responsibility for such default can not be located, it is mutually agreed that any damages or liabilities resulting therefrom shall be divided and borne by the parties hereto in the same proportion as the tolls were divided from the telegrams defaulted upon.)

"(2) Neither party hereto shall be liable to the other for loss or damage resulting from interruptions to lines which could not with reasonable care or promptness have been avoided or repaired, and each party hereto agrees to repair with the utmost diligence any interruption to its telegraph lines herein mentioned.

"Seventh: This agreement shall be binding upon the parties hereto and upon their respective successors and assigns (it being understood and agreed that the Postal Company and its allied companies shall be considered as one and the same company); and shall be and continue in full force and effect from the date hereof until the 11th day of May, 1947. In the event that the Texas Company and the Western Union Telegraph Company property shall hereafter come under the same control, directly or indirectly this contract may be terminated forthwith by the Postal Company."

While it is declared in the first subdivision thereof that the contract is not intended to make either party the agent or representative of the other, and that it shall not be construed to have that effect, still we are of opinion that, when all of its terms are considered, it discloses such a joint enterprise between the two companies as will render each responsible to third parties for the negligence of the other. This contract is more than an ordinary traffic arrangement stipulating for a division of tolls. By the second subdivision the two companies share the expense of maintaining offices at Memphis, Tennessee, and at New Orleans, Louisiana. That, as well as other stipulations, indicates that the two companies were engaged in a joint enterprise when they handled messages passing over both lines, as did the message in this case.

We also attach importance to the first paragraph of the sixth subdivision by which it is stipulated that each company assumed all the responsibility for damages resulting from errors, delays, nondelivery or other defaults occasioned by its fault, and that if the responsibility for such default can not be located, any damages or liabilities resulting therefrom shall be divided and borne by the two companies in the same proportion as the tolls are divided from the telegram defaulted upon. If the preceding stipulations in the contract created such relations between the two companies as to render each and both liable to third parties for the negligence of each company, it was not within the power of the two companies to ward off or diminish such liability by stipulating that the one in default should pay the damage; and therefore it is not to be presumed that the stipulation referred to was incorporated in the contract for that purpose, and especially so, when another and legitimate purpose can be assigned therefor. Instead of assigning to that stipulation a purpose to affect and curtail the rights of third persons, which the contracting parties had no power to do, it is much more reasonable to assume that it was placed in the contract upon the assumption that both of the companies would be liable to third parties for the default of each; and therefore it was necessary to have an understanding between the two companies as to how much of the damages resulting from such defaults should be charged against each company in settling their own affairs. The testimony shows some delay and default by each company, and it would be difficult, if not impossible, to determine how much of the injury sustained by the plaintiff resulted from the separate default of each company. Hence it would seem that this case falls within the class of cases contemplated in the latter part of the first paragraph of the sixth section of the contract, wherein it is stipulated that the damages are to be borne by the two companies in proportion to the tolls received from the telegram defaulted upon. It is the settled law in this State that a telegraph company can not contract so as to relieve itself from liability for its own negligence; and the two companies in this case being engaged in such a joint enterprise as to render both responsible to persons dealing with either, concerning messages to be handled by both, we hold that the stipulation on the reverse side of the message attempting to restrict the liability of the Texas Company, was not available as a defense, and the trial court properly instructed the jury that

the Texas Company would be liable for the failure of the other defendant to exercise proper care in transmitting and delivering the message.

*Motion overruled.*