KNIGHTS OF MACCABEES OF THE WORLD v. JOHNSON.†

(Court of Civil Appeals of Texas. Texarkana. Jan. 26, 1912. On Motion for Rehearing, Feb. 1, 1912.)

1. INSURANCE (§ 819*)—MUTUAL BENEFIT INSURANCE—SUICIDE—EVIDENCE.

In an action on an insurance policy, evidence *held* sufficient to sustain a finding by the jury that the deceased did not step in front of the train by which he was killed with suicidal intent.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 819.*]

2. EVIDENCE (§ 588*)—CREDIBILITY—INTEREST OF WITNESS—PARTY CAUSING INJURY.

In an action involving the question of whether a person stepped in front of a train with suicidal intent, the engineer of the train by which he was killed is an interested witness; and hence his credibility is for the consideration of the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. § 588.*]

3. APPEAL AND ERROR (§ 970*)—TRIAL (§ 91*) — DISCRETION OF COURT — EVIDENCE — MOTION TO STRIKE OUT.

Where, after witnesses have been fully examined and cross-examined, a motion is made to strike out their testimony, and it does not appear why objection was not made when the testimony was offered, the determination of the motion rests largely in the discretion of the trial judge, and, unless he has abused his discretion, the judgment will not be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 970;* Trial, Dec. Dig. § 91.*]

4. TRIAL (§ 83*)—OBJECTION TO EVIDENCE—SUFFICIENCY.

If evidence is relevant to the issue, an objection, on the ground that it is immaterial and irrelevant, is properly overruled, although the testimony be incompetent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 193–210; Dec. Dig. § 83.*]

5. JUDGMENT (§ 256*)—CONFORMITY TO VERDICT—INTEREST.

Where the jury returned a verdict for a specific sum, the inclusion of interest in the judgment was improper.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 452; Dec. Dig. § 256.*]

Appeal from District Court, Harrison County; W. C. Buford, Judge.

Action by A. S. Johnson against the Knights of the Maccabees of the World. From a judgment for plaintiff, defendant appeals. Modified.

J. E. Yantis, Clark, Yantis & Clark, and F. H. Prendergast, for appellant. Beard & Davidson and A. A. Aitkin, for appellee.

HODGES, J. On December 17, 1904, the appellant issued a policy of insurance on the life of Herman M. Johnson for the sum of $3,000, in which his father, the appellee, was named as the beneficiary. On the 14th day of April, 1910, Herman M. Johnson was run over and killed by a train on the Southern Pacific Railroad, in California. Proofs of death were made in accordance with the terms of the policy; but payment was refused, upon the ground that the death of the insured was due to suicide. Appellee recovered in the court below a judgment for the full amount of the policy, with interest at the rate of 6 per cent. per annum from the 14th day of May, 1910. From that judgment, this appeal is prosecuted.

[1] The first and second assignments of error question the sufficiency of the evidence to support the verdict; the appellant claiming that the undisputed testimony showed that the deceased got on the railroad track in front of an approaching train with the deliberate intention of being run over by the locomotive. The only eyewitness to the killing who testified upon the trial was the engineer, George Drake, who was in charge of the train that caused the death of Johnson. He gives the following account of the occurrence: He stated that when within about half a mile west of Mountain View, a station on the Southern Pacific Railroad, he observed a man walking west on the eastbound tracks; the railroad at that place being double-tracked, one track used by trains going in one direction, and the other by trains going in the opposite direction. He then says: "When I was about, I should judge, in the neighborhood of 300 yards of him, the man looked over his shoulder, and walked leisurely along the track. I fully realized that the man was certain of his position on the safe side; and I judge when I got between 150 and 175 feet of him he deliberately stepped over on the track and faced the approaching engine, with his right leg and foot forward, looking directly up at the engine; and I noticed his face in particular, in that he had an expression of fear on his face. When he stepped over on the

track, the train was going at the rate of about 40 miles an hour; and it all happened so quickly that just when the man braced himself he was struck. It was about the fifteenth train that passed by there that morning; that is, 10 trains had gone west and 5 east." When asked to describe the position in which the deceased stood, he said: "Stood erect, right leg forward." Again he says: "The man that was killed entered upon the track upon which I was running hurriedly; double-quick stepped it from one track to the other to face the engine. To prevent the accident, I shut off the steam, applied the emergency brakes immediately, and the train ran about 13 car lengths." The testimony further showed that the deceased was a young man, about 25 years of age; and that he had been engaged in the service of a telegraph company. His father and mother resided in Harrison county, Tex., and he had been absent from home for some time. At the time he was killed, the witnesses who examined him say he was fairly well dressed and had a growth of beard upon his face, showing that he had not shaved within probably 10 days. No money, except a penny, was found upon his person.

As controverting the truth of the engineer's testimony regarding the suicidal intent of the deceased, the appellee relied upon evidence tending to show the absence of any motive on the part of Herman M. Johnson to take his own life. He also offered evidence as to the character of the wounds upon the body, as indicating that Johnson was not in the position claimed by the engineer at the time he was struck, and other physical conditions inconsistent with the truth of the engineer's account. It was shown that at the time Johnson was killed he was engaged to a young lady, to whom he expected to be married during the following June. Other testimony indicated that he was a man of good habits and character, of a cheerful disposition, in good health, and was not given to spells of despondency calculated to cause suicide. The undertaker who took charge of the body of the deceased after the accident testified as follows concerning the wounds and bruises on the body: "His right leg was struck and crushed about halfway between the ankle joint and the knee. The bone broke squarely off, and protruded through the skin on the front of the leg; about nine inches of the bone sticking out the front portion of the leg. His right hip was also crushed, and the right side of his head was crushed in, presumably from where he struck the ground, ties, or whatever he struck. The left leg was broken between the thigh and the knee. The whole body was pretty badly bruised. Both the right and left legs were crushed. Neither one of his arms was broken. The right side of his head was mashed. His body was covered with blood and cinders. Dirt and gravel ground into the flesh and blood." There

was also testimony showing that a portion of the brain of the deceased was found lying on the engine pilot. His body had been thrown by the force of the engine to the outside of the track. The appellee also offered the testimony of experts, who gave their opinion regarding what portions of the body would suffer bruises and contusions if the deceased was in the position testified to by the engineer at the time he was struck. Those opinions justified conclusions inconsistent with the statements of the engineer.

[2] In this state of the evidence, it could not be assumed, as a matter of law, that a suicide had been established. The court and jury were not compelled to accept the engineer's statements as true. It cannot be said that the engineer was an entirely disinterested witness. While he may not have been financially interested in the result of this particular suit, he was necessarily concerned in a different way. He was in charge of the locomotive that caused the death of Johnson, and naturally his desire to shield himself from the charge of culpable negligence would furnish some inducement to concoct a story that would exonerate him from blame, or to suppress facts showing negligence on his part. An admission in this suit that the tragedy was due to his own negligence might be expected to result in his discharge from the railway service, or it might subject him to more serious consequences still. There are few, if any, ordinary men who would regard with indifference a well-founded charge of negligent homicide preferred against them, even though no penal consequences were attached. Of course, such a self-preserving impulse might not necessarily suggest the suicide theory, or the particular facts narrated by this witness; but why not that theory and those facts as readily as any other that might be untrue? The testimony concerning the bruises upon the body was not altogether consistent with the account given by the engineer as to the attitude Johnson stood in at the time he was struck. We think the court was right in submitting the issue of fact and in refusing the new trial asked for. The jury had a right to pass upon the credibility of Drake, the engineer, and to disbelieve what he stated concerning the suicidal intent of the deceased. Franklin Life Ins. Co. v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 203, and cases cited.

[3] The next three assignments complain of the admission of the testimony of three witnesses, who gave their opinions as experts concerning the probable position deceased was in at the time the train struck him, and as to where the marks and bruises would have appeared upon the body, had the deceased been facing the engine in the manner testified to by the engineer. This testimony was not objected to when offered, and there was no exception in the record, beside the following, which appears in the statement of facts:

"Defendant: In pursuance of what I said yesterday, I believe I will now make a motion to exclude this oral testimony, because the testimony is immaterial to the issues to be tried in the case. I think my motion will cover the entire oral testimony of Dr. Moore, Mr. Jordan, and Mr. Jaquish. Of course, your honor can hear the argument, and when you go to charge the jury you can determine about it. The Court: Of course, it is all right for your motion to cover the whole testimony, but there may be some parts of this testimony that I am willing to sustain the motion to, and other parts I wouldn't; and if counsel would indicate that at some convenient time, I can make the ruling more definite. Defendant: Then I move to exclude all of the testimony of Dr. Moore, because he merely states facts which any man knows, and no medical expert would know any better than an ordinary man, and because he has no personal experience as to how a man is injured by being struck by a train, and the facts testified to by him are immaterial and irrelevant to the issues to be tried here. And I move to exclude the testimony of Jordan and Jaquish, who have testified here—Jaquish, who has been an engineer for 20 years, Jordan for 10 years—one of whom says he has never seen a man struck by an engine, and never hit one with his engine; and therefore his testimony would be mere surmise. And I move to exclude the testimony of Jordan for the same reason as Jaquish, except that he had struck two men, but who says that he had no experience in examining the wounds for the purpose of determining how a man was struck by an engine. The Court: The objection is made to the whole of the testimony, and no single part of it is singled out; and I will have to overrule the motion, to which defendant excepts." It seems that appellant's objection came after the taking of testimony had been concluded, and is directed against the entire testimony of all three of the witnesses named. It also appears that the objection was after the appellant had exercised fully the right of cross-examining all of these witnesses. No reason is given why this testimony was not objected to at the time it was offered; nor does there appear to have been any excuse for the delay. In such cases, the exclusion of the testimony will be left, in a large measure, to the discretion of the trial judge, and the judgment will not be reversed because of his ruling, unless it appears that he has abused that discretion. M. P. Ry. Co. v. Lamothe, 76 Tex. 219, 13 S. W. 194; Ft. W. & D. C. Ry. Co. v. Andrews, 29 S. W. 920; Matlock v. Glover, 63 Tex. 231.

[4] It may be that what was said in the colloquy between the court and defendant's counsel, as set out above, is sufficient to show that counsel intended to make a separate objection to the entire testimony of each of the three witnesses named. The testimony of Jordan and Jaquish is not subject to the objections urged, even if these are considered sufficiently specific to require consideration. The testimony of Dr. Moore is objected to upon the ground that what he stated was not the subject-matter of expert testimony, and that it was irrelevant and immaterial. The first objection may be well taken, but the second is not. Incompetent testimony will not be excluded upon the objection alone that it is irrelevant and immaterial, if it has any relevancy to the issue then before the court. Postal Tel. & Cable Co. v. Sunset Const. Co., 109 S. W. 265. Dr. Moore's testimony consisted of answers to a few hypothetical questions, and he was fully cross-examined by counsel for appellant without any objection having been made to his previous answers. We do not think that under the circumstances there was any reversible error in refusing the motion as to him. Maverick v. Maury, 79 Tex. 441, 15 S. W. 686; Norton v. Mitchell, 13 Tex. 47.

[5] The judgment, however, must be modified, so as to exclude the interest allowed prior to its date. Upon the issues submitted to the jury, a verdict was returned for the sum of $3,000 only; and that sum fixed the amount for which the judgment should have been entered by the court.

The judgment will therefore be reformed and affirmed in accordance with that view.

## On Motion for Rehearing.

The appellant's motion for rehearing is overruled.

The appellee also filed a motion for rehearing, in which he asks to be relieved of the costs of this court, which were adjudged against him in the original opinion. Upon further consideration, we have concluded that this part of his motion should be granted. It is ordered, therefore, that the judgment be so modified as to award the costs of this court, as well as the costs of the court below, against the appellant. In all other respects, the appellee's motion for rehearing is overruled.