FRANKLIN LIFE INSURANCE COMPANY v. MRS. SWEETIE VILLENEUVE.

Decided April 2, 1902.

**1.—Compromise—Consideration—Good Faith of Controversy.**

Where the compromise of a claim certain in amount is made for a less sum, the question whether the release of the amount not paid is supported by a consideration depends on whether the controversy over the liability of the debtor is one raised in good faith.

**2.—Same—Insurance—Incontestable Policy.**

Facts considered and held to support a finding that the controversy over the liability of an insurance company on a policy procured by misrepresentations, but incontestable, by its terms, because it had been in existence over a year, was not raised in good faith by the company, and the settlement void for want of consideration; also charges held to correctly submit that issue.

**3.—Uncontradicted Testimony—Interested Witness.**

The jury are not bound to believe an interested witness, though uncontradicted.

**4.—Insurance—Attorney's Fees.**

Attorney's fees were collectible in a successful suit for the balance of an insurance policy providing for their recovery, though the company had paid a part of the insurance, in compromise, without suit.

Appeal from Travis. Tried below before Hon. F. G. Morris.

*Fiset & Miller,* for appellant.

*Hogg & Robertson,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—The statement of the nature and result of the suit in appellant's brief is correct, and we adopt it as follows:

Appellee sued appellant to recover a balance with interest, claimed to be due upon a life insurance policy issued by it upon the life of her husband and payable to her as beneficiary. The balance was the difference between $5000, the face of the policy, and $3900, the amount appellant paid appellee in compromise of her claim under the policy. Appellee sought to set aside the compromise agreement on the alleged grounds (1) that she was fraudulently procured to make it; and (2) that the compromise was without consideration. She further prayed for the recovery of the statutory 12 per cent penalty and reasonable attorney's fees. In a trial by jury she obtained judgment for the unpaid balance with interest and for penalty and attorney's fees, amounting to $1581.86, and judgment was accordingly entered. Appellant made a motion for new trial, and took the other necessary steps for an appeal to this court.

*Facts Proved.*—We find the facts, briefly stated, as follows: That on the 29th day of March, 1898, the appellant issued the policy sued upon for the sum of $5000 on the life of Celestin Villeneuve, payable to his wife, Mrs. Sweetie Villeneuve, as beneficiary. He died May 12, 1899, and satisfactory proof was made thereof by the appellee and received by the appellant. As a part of the contract of assurance, the assured represented and stated, in effect, that he was a man of temperate habits, and that he had not applied for insurance upon his life in other companies and been rejected. These statements were warranted to be true, and in the event they were false it was agreed that the policy should become void. We find that the statement concerning the application for insurance in other companies was false, and but for the following provision contained in the policy this false statement would have rendered the entire policy void: "If the terms of this contract be complied with, it shall be incontestable after one year from its date." The compromise settlement pleaded by appellant was made October 6, 1899, upon which occasion the appellee executed the following receipt and release: "Dated at Austin, Texas, October 6, 1899.—Received of the Franklin Life Association, of Springfield, Ill., four thousand dollars, in full of all claims under and to the within certificate of membership, No. 21,969, on the life of the late Celestin Villeneuve, and hereby surrender all my right, title and interest under and to the same, and releasing said association from all liability; also warranting and defending said payment against any and all claimants whatsoever. Mrs. Sweetie Villeneuve. [Seal.] Attest before W. W. Harris, H. Clausen." The receipt states that she received the sum of $4000 from the appellant as settlement in full of the entire policy, but we find, as a matter of fact, that she only received the sum of $3900. The compromise settlement was made and this receipt was executed by the appellee based upon the representations made by the agent of the company, who then and there had the power and

authority to represent the company in negotiating the settlement, to the effect that the entire policy was void, by reason of the fact that her deceased husband had made the false statements, as above set out, concerning his habits of temperance and not making an effort to procure a policy in other companies. At the time these representations were made the agent of appellant knew that the policy contained the incontestable clause, as above set out. He at the time was representing the company, and occupied towards the appellee no confidential or fiduciary relationship. The appellee, at the time the representatives were made and the settlement effected, relied upon these representations, and believed they were true, and had no actual knowledge that the policy contained the incontestable clause.

We also find that the home office of the insurance company is in the State of Illinois, and that there is a provision of the contract that makes the policy payable there, and that there is no statute of that State, similar to ours, allowing the recovery of the penalty and attorney's fees sued for by the appellee in this case. We further find, from statements contained in the application for the policy and from indorsements on the policy, that it was issued to Celestin Villeneuve, a resident of Austin, Texas.

The same facts were in evidence on the first trial of the case, as far as above stated. The court below instructed the jury on the question of consideration for the settlement made by plaintiff and the company, whereby she accepted the amount paid her in satisfaction of her claim on the policy, "that the effect of the settlement does not depend alone upon the question as to whether or not the contention made by defendant's agent that the policy was void was made by him in good faith in the belief that the contention was well founded, or presented a doubtful question. Hence the question as to whether or not there was any consideration for the settlement binding on the parties must depend upon the answer of the jury to the question: Did the plaintiff's [evidently meaning defendant's] agent in making said contention do so in good faith, believing that his contention was well founded, or presented a doubtful question, or did he make such contention in bad faith, knowing that such contention was not well founded? If the jury believe from the evidence that defendant's agent urged said defense in good faith, believing it to be a substantial defense, or a doubtful question, and thereby raised a dispute or controversy as to the liability of the company, then the settlement between plaintiff and defendant company of such controversy for a less amount than that which was actually owing was binding on the plaintiff, the settlement of such bona fide controversy, if it existed, being a sufficient consideration to support the contract to accept less than the full amount as a payment in full, and if the jury so find, they will return a verdict for defendant. On the other hand, if the jury do not believe from the evidence that said contention was made in good faith by defendant's agent in the belief that it was well

founded or presented a doubtful question, but believe that it was simulated for the purpose of forcing a compromise or escaping liability for the entire amount due, when said agent did not believe said contention to be well founded or to present a doubtful question, then there was no consideration to support the agreement to settle for less than the full amount of the policy, and if the jury so find they will return a verdict for plaintiff for the unpaid part of said policy, with 12 per cent damages added thereto, in accordance with the statutes of this State, as a penalty, from the 6th day of October, 1899, until this time, and the further sum of $250 as attorney's fees, which the parties have agreed in this case is a reasonable attorney's fee for plaintiff to be allowed in case she recovers at all, making the total amount of your verdict for plaintiff the sum of $1585.86, if you shall render any verdict for plaintiff on the issue submitted to you herein."

The testimony amply warranted the submission of the question submitted above as to the good faith and belief of defendant's agent in effecting the settlement with plaintiff, and on the question of his belief that the question of liability of defendant herein was doubtful. The evidence was sufficient to warrant the conclusion of the jury, evidenced by the verdict in favor of plaintiff, that T. C. Roseberry was the company's secretary at the time of the settlement with plaintiff relied on as conclusive of the rights of plaintiff and he negotiated the settlement with her, the official corps being a president, vice-president, treasurer, secretary, assistant secretary, and medical director. He had before been agent for a while, writing applications and soliciting business. At the time of the settlement with plaintiff, he signed policies when at home, and when not there his assistant signed policies. He came to Texas for the purpose of trying to settle the claim of plaintiff, in October, 1899. He first attempted to make the settlement on a basis of $3500 by way of compromise. He told her that it was a good settlement, and more than the company "liked" to pay, but that "we always tried to avoid law suits, and we appreciated what it was to fight a woman before a jury, and thought we would rather pay an amount which we thought large, rather than not to settle the claim at all. She declined for that sum. Mr. Harris, present, suggested that we compromise for $4000, but we both ignored his proposition when he first made it. I then endeavored to settle for $3750. She declined that. When I finally became satisfied that she would not settle for $3750, I offered to give her $4000, provided she would pay my expenses incurred on the trip, in the neighborhood of $100." She was reluctant to accept the proposition, but did at last agree to take his check for $4000, and give him her check for $100 next morning. The settlement was made on that basis, and she gave him the check for $100 next morning, which was paid. The $4000 was paid to her.

As to the clause in the policy: "If the terms of this contract be complied with, it shall be incontestable after one year," the same witness says: "At the time this clause was put in the policies, and for a long

time afterwards, I supposed in a general way that it meant just what it said—that if the terms were complied with it would be incontestable for anything not specified in the contract; that a man might go to Klondike and die from exposure, and yet while we would not issue a policy knowing this, if he went and did not die until one year after it was issued, we could not contest the policy. But at the time I had the conversation with Mrs. Villeneuve, owing to discussion with attorneys, I had come to the conclusion that the clause was very indefinite, and that no one knew just what it did mean." The witness here relates facts of investigation upon the subject, and opinions of attorneys, and says that when he came to Austin to settle plaintiff's claim, he did not believe the incontestable clause entirely precluded the company from contesting the policy on grounds of misstatement by the husband of plaintiff in his application for insurance.

The witness proceeds: "In the conversation at Mrs. Villeneuve's house, she had informed me that she felt certain she would win her case, and from her reference to Hogg & Robertson I supposed she had taken their advice." The next morning after the settlement had been made the two, plaintiff and the witness, met at Hogg & Robertson's office, and among other things witness says he asked Judge Robertson: "Judge, how could you advise Mrs. Villeneuve that she had a sure thing against our company?"

Mrs. Villeneuve testified that the witness Roseberry stated to her in the interview leading to the settlement, that she had no claim against the company, because her husband had made misstatements in his application for insurance as to his habits of drinking, and that he had not been rejected for insurance on his life by other companies, and that if it came to court there was always a chance for his side to win. And "he seemed to think my chances were slim, otherwise I would not lose eleven hundred dollars on it. He certainly told me that the company had defenses to my suit, one being the intemperate habits of my husband, and the other that he had never applied for insurance to and been rejected by other companies. * * * He said that by reasons of these false statements I could not recover on the policy. * * * I decided, since I was not, as he represented, going to get anything in court, to take the $3900."

W. H. Harris, who was present during the conversation with Roseberry, testified "that Roseberry stated to her repeatedly that Mr. Villeneuve had represented in his application that he had never been rejcted by any other company, and that he was a temperate man, which representations Mr. Roseberry claimed were false, and that these false statements rendered the policy void. These statements were repeated by him many times."

We find that to induce the settlement Roseberry made the statements repeated by the witnesses, and that plaintiff believed and relied upon them, and agreed to the compromise at $3900.

*Opinion.*—The court did not err in refusing to direct a verdict for de-
fendant, as requested by defendant, before any testimony was offered by
it.   The issue for the jury was correctly presented in the court's charge
and they were warranted by the testimony in finding that Roseberry, an
interested party, did not in fact believe the policy could be contested and
that he did not act in good faith in producing the impression on plain-
tiff that the incontestable clause in the policy was in fact contestable.
We decided when this case was before us on a former appeal that the
issue as to whether the compromise settlement was based on any con-
sideration rendering the settlement a valid satisfaction of the policy
should have been left to the jury, and the judgment for the plaintiff was
reversed, because this issue was not submitted; and it was also then de-
cided that the clause rendering the policy incontestable after one year
.from its date, though uncertain and of doubtful meaning, rendered the
policy incontestable in fact after one year.   We still hold the same view
of the case and the law applicable to the facts.   Insurance Co. v. Ville-
neuve, 60 S. W. Rep., 1014.

On the last trial the question as to consideration of the compromise
was properly submitted to the jury according to our views as expressed
on the first appeal, on testimony which warranted the verdict.   Rose-
berry was seeking a compromise on premises which the jury have de-
clared he did not believe were well founded or of doubtful effect, and
it is impossible for us to declare that the verdict is wrong, since there
is testimony sufficient to authorize the submission of the question and to
support the finding.

Whether Roseberry was sincere in representing to plaintiff that the
incontestable clause in the policy was of doubtful interpretation, and
whether he acted in good faith in that respect, were questions for the
jury, properly submitted by the court's charge, upon testimony demand-
ing its submission, and we find that the verdict should not be set aside.

The court instructed the jury as to the law of the case as follows:
"If the jury believe from the evidence that defendant's agent urged
said defense, intemperance of the insured, in good faith, believing it to
be a substantial defense or a doubtful question, and thereby raised a
dispute or a controversy as to the liability of the company, then the set-
tlement, between plaintiff and defendant, of such controversy for a less
amount than that which was really owing was binding on plaintiff, the
settlement of such bona fide controversy being a sufficient consideration
to support the contract."   The opposite view was also submitted by the
charge, in which event the jury were told to find for plaintiff.   The
verdict settled the controversy, and it ought to be sustained.

The jury were not bound to believe the witness Roseberry, though not
contradicted, as to the contestability of the incontestable clause.   He was
an interested witness, and the jury could consider that fact in passing
upon his testimony, and give it such credit as they deemed it deserved.
Coats v. Elliott, 23 Texas, 613; 63 Texas, 275; 74 Texas, 600; 92 Texas,
307; 56 S. W. Rep., 548.

Attorney's fees were collectible, and there was no error on that branch of the case.

All the important questions in the case were decided by this court on the former appeal, and we can see no error in what was then decided, and consequently hold to the views then expressed.

We deem it unnecessary to consider the cross-assignments of error further than to say that they are not well taken; especially as to the question of fraud, we hold as in our former opinion.

From what has been said it will be seen that we intend that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.