(April 18, 1911.)

## EUGENE PAGE, Respondent, *v.* BRADFORD-KENNEDY CO., Appellant.

[115 Pac. 694.]

REAL ESTATE—CONTRACT FOR SALE OF—LICENSE TO CUT TIMBER—ASSIGNMENT OF LICENSE.

(Syllabus by the court.)

1. Under a contract for the sale of real estate by H. to M., whereby M. is granted the right to cut certain timber standing on said land, and pay therefor the sum of $1.50 per thousand feet of timber so cut, and assigns his contract to purchase said land to the A. C. Co. and the A. C. Co. fails to complete the contract, but makes a contract with B. K. and E. to cut timber from said land, and they assign their contract to the B.-K. Co., *held,* that the B.-K. Co. is liable under said assignment to them.

2. A would-be purchaser in possession of land under an executory contract for the purchase of the same is estopped from denying his vendor's title.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. R. N. Dunn, Judge.

Action to recover the value of timber cut from certain lands. Judgment for plaintiff. *Affirmed.*

William T. Stoll, for Appellant.

There is absolutely nothing in the record to show that either Hye, McInturff, Kent, the Alamo Colony, or the Northern Pacific Co. ever acquired title to this land from the gov-

ernment, and the failure to show those facts is absolutely fatal. There is nothing in the record to show that any of these parties except McInturff ever had possession of the lands. A mere agreement to sell, or even a conveyance itself is not sufficient, without showing title in the vendor. (*Wisconsin Ry. Co. v. Price County,* 133 U. S. 509, 10 Sup. Ct. 341, 33 L. ed. 687; *Deseret Salt Com. v. Tarpey,* 142 U. S. 251, 12 Sup. Ct. 158, 35 L. ed. 999; *Barden v. N. P. R. Co.,* 154 U. S. 313, 14 Sup. Ct. 1030, 38 L. ed. 992.).

É. W. Wheelan, for Respondent.

"As a general rule, a person may rest upon the constructive notice which the record of his title imparts, and he is under no duty or obligation to give any other notice to anyone who assumes to deal with other parties in reference to such property, but may remain silent and passive." (*Eastwood v. Standard Mines Milling Co.,* 11 Ida. 195, 81 Pac. 382.)

A purchaser in possession under an executory contract for the sale of real estate is estopped to deny his vendor's title. (29 Am. & Eng. Ency. of Law, 706, and authorities cited thereunder.)

SULLIVAN, J.—This action was brought to recover possession of 1,500,000 feet of cottonwood sawlogs alleged at the time of the commencement of the action to be banked along the Kootenai river, on section 7, township 63 N., range 1 E., of Boise Meridian, and alleged to be of the value of $2,250. An affidavit and undertaking in claim and delivery was filed, with notice to the sheriff to take possession of the property described in the affidavit. Thereafter appellant filed a motion to quash the writ of replevin upon the grounds that the complaint and affidavit did not state facts sufficient to authorize its issue. Said motion was denied by the court. A general demurrer was filed to the complaint and overruled by the court. Thereafter plaintiff answered, denying all of the allegations of the complaint, and set up title in the ap-

pellant, also pleaded an estoppel. The cause was tried before a jury and verdict and judgment given and entered for the respondent in the alternative, for the return of the logs or for their value, found to be $2,197.50.

The appeal is from the judgment and order denying a new trial.

It appears from the record that on the 24th day of January, 1902, the Northern Pacific Railway Co. contracted to sell and convey to one Fred E. Empey the land described in the complaint, from which said sawlogs were cut; that one Thomas Hye succeeded to the interest of Empey and said contract of purchase; that on February 7, 1905, said Hye and wife entered into a contract for the sale of said lands to McInturff and others, trustees. On August 26, 1905, McInturff et al. entered into a contract for the sale of said premises to one Kent. Thereafter on July 6, 1906, said Kent and wife entered into a contract with the trustees of the Alamo Colony Co. for the sale of said land to it. On October 22, 1906, the Alamo Company conveyed said premises to said Thomas Hye and thereafter Hye and wife, on December 3, 1906, conveyed said lands to Eugene Page, the respondent in this action. All of said contracts of sale were subject to the provisions of the contract of sale made by the Northern Pacific Railway Co. to said Empey. On December 21, 1908, the Northern Pacific Railway Co. conveyed by deed said lands to the respondent Page. On October 22, 1906, Hye and wife entered into an agreement with D. M. McInturff for the sale of said lands to him and certain personal property described in said agreement. On May 8, 1907, D. M. McInturff assigned and transferred to the Alamo Colony Company whatever interest he had in the contract of October 22, 1906, executed by said Hye and wife, and on August 17, 1907, the Alamo Company entered into a contract with Blume, Kippen and Ely whereby they agreed to cut and put into the river certain cottonwood sawlogs from said lands, and on the 1st day of February, 1908, said Blume, Kippen and Ely assigned their interest in said contract with the Alamo Company to the Bradford-Kennedy

Co., and the Bradford-Kennedy Co. proceeded and cut the logs in controversy from said lands.

It is contended by counsel for appellant that under the contract of October 22, 1906, made by Hye with McInturff, whereby the latter agreed to purchase said lands and certain personal property, that McInturff had no authority to enter into a contract with the Alamo Company to cut said timber or that if he had, the Alamo Company had no right to assign this right to cut timber to Blume, Kippen and Ely, and that Blume, Kippen and Ely had no authority whatever to assign their interest in the contract with the Alamo Company for cutting said timber. McInturff's authority to assign his interest in said contract of October 22d to the Alamo Company, and its right to employ Blume and others to cut said timber, arises from the provisions of said contract of October 22d. We find, among others, the following provisions in that contract:

"The intent being at all times to keep said property in such a condition of *statu quo,* so that the security of said first parties shall always be equal or better than it is or was at the date of signing this contract. . . . .

"Provided, also, that should any timber be cut off of said lands, said second party shall be required to pay up on the indebtedness of said lands, either upon the first mortgage, or railway contracts, or upon this contract, within the discretion of said second party, at least one and one-half ($1.50) dollars for every thousand feet of timber or lumber so cut, which is sold and transferred off of said place. . . . .

"It is especially agreed between the parties hereto, and which forms a part of this agreement, that said second party shall not make any contracts or agreements of whatsoever kind, nature or description which will in any way affect or injure the title which said first parties now hold to the property herein conveyed.

"It is especially agreed and understood that said second party shall at all times comply with the requirements and conditions contained in any mortgage now existing upon said property, or any part thereof."

Said contract was recorded in the office of the county recorder of Bonner county on April 12, 1907, and the record thereof was constructive notice to all persons dealing with the parties to said contract in regard to said land. While under the provisions of that contract McInturff had authority to cut certain timber on said land, he was required to pay on the indebtedness on said land, either upon the first mortgage or railway contracts, at least $1.50 for every thousand feet of timber so cut. Blume, Kippen and Ely assigned whatever right they had under said contract to cut timber to the Bradford-Kennedy Co., the appellant, and by the terms of said assignment the Bradford-Kennedy Co. assumed all future liability ''respecting the performance and discharge of said contract thereby imposed on said H. J. Blume, W. F. Kippen and Smith Ely.''

The contract therein referred to was the contract made by the Alamo Company with Blume, Kippen and Ely and in that contract Blume, Kippen and Ely promised to pay $1.50 per thousand feet, log measure, for all timber cut, hauled and skidded on said premises. The contract between Hye and McInturff of March 22, 1906, and duly recorded in the office of the recorder of Bonner county, was notice to the world of the conditions upon which any timber might be cut from said premises under the contracts above referred to. That contract contained the provision above quoted, which, in substance, required McInturff to pay on certain indebtedness $1.50 per thousand feet for all timber cut from said premises. Conceding that the right to cut timber as provided for in said contract between Hye and McInturff was assignable, under its provisions the assignee must comply with said contract between Hye and McInturff and pay the $1.50 per thousand feet for such timber.

The conveyance from Hye to Page made on the 3d of December, 1906, contains the following provisions:

''And that the same are free from all encumbrances, save and except a balance due to the Northern Pacific Railway Company on Three (3) certain contracts for the purchase

of a part of the land herein described, which contracts are numbers 647, 777 and 806, which said balance on said contract said party of the second part assumes and agrees to pay, and which said contracts have been assigned by said party of the first part to said party of the second part. . . . . Also subject to a contract of sale to D. N. McInturff, for Twelve Thousand, Five Hundred Dollars ($12,500.00) to be paid as provided for in said contract, a copy of which is herewith delivered.''

Under the terms of that conveyance to Page, it cannot be contended that the conditions in the contract of the sale made by Hye to McInturff were not taken into consideration by the grantee in accepting this conveyance. A copy of said contract was delivered to him at the time said conveyance was accepted. On the 8th of May, 1907, McInturff attempted to assign the contract dated October 22, 1906, to the Alamo Colony Co., Ltd. The assignment contains the following provision:

''The party of the second part herein assumes the payments to be made under the said contract herein referred to and promises to pay the same in the manner and time therein specified and all provisions therein contained are hereby referred to and the same made a part hereof. Reference is hereby made to Book U of Miscellaneous Records at Page 589 of Kootenai County Records for the terms and conditions of said contract and agreement.''

Assuming that McInturff had authority to assign this contract, the restrictions on McInturff contained in the provisions of said contract became binding on the Alamo Co., and that. company could not make any conveyance or contract affecting the title to the land in question which McInturff was prohibited from making.

The deed executed by the Northern Pacific Railway Co. conveyed to the respondent the land in question and was a deed of general warranty except as to taxes, assessments and railroad right of way and certain mineral rights. Thereafter on the 19th of January, 1909, the Alamo Company assigned to the respondent all of its interest in the contract of October

22, 1906, executed by Hye and wife to said McInturff. That contract for the purchase of said land was never completed by McInturff or his assignees so as to entitle McInturff or his assigns to a deed from the railroad company. The contract executed by the railroad company for said lands, and which was afterward by assignment from the vendee Hye transferred to Page, the respondent, ripened into a title to Page from the railroad company. That being true, as a matter of right he was entitled to all of the timber on that land which was removed by another party without his consent that Hye would have been entitled to.

Under the contract of October 22, 1906, the stipulated price to be paid for all timber cut by McInturff from said land was $1.50 per thousand feet, and the suggestion that said timber was worth nothing, and that the cutting of it improved the land, cannot be considered in the determination of this case. By the acceptance of the assignment of said contract from McInturff and the entering into possession of said land thereunder, the Alamo Company recognized the title of Hye, and its possession, as well as the possession of McInturff, subsequent to the conveyance from Hye to Page was the possession of Page, the respondent. It is a well-established rule of law that a purchaser in possession under an executory contract for the sale of real estate is estopped from denying his vendor's title. (29 Am. & Eng. Ency. of Law, 706.)

We have considered the other errors assigned and are unable to find sufficient error in the record to warrant a reversal of the case, as we are satisfied that substantial justice has been done by the judgment entered in the case.

The judgment is *affirmed,* with costs in favor of the respondents.

Ailshie, Presiding J., concurs.

Petition for rehearing denied.