## GROVES v. WHITTENBERG.

(Court of Civil Appeals of Texas. Amarillo. March 21, 1914. On Motion for Rehearing, April 18, 1914.)

1. SPECIFIC PERFORMANCE (§ 123*)—DEFENSES —ABANDONMENT AND REPUDIATION—QUESTION FOR JURY.

The defenses of abandonment and repudiation of a contract by the party suing for its specific performance depend on intent, and are for the jury.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 397–399; Dec. Dig. § 123.*]

2. JUDGMENT (§ 589*)—RES JUDICATA—QUESTIONS CONCLUDED.

Where a purchaser in a contract for the purchase of real estate secured a quitclaim deed from third persons, and then brought trespass to try title against the vendor, who obtained judgment, the judgment was not res judicata in a suit by the purchaser for the specific performance of the contract.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1065, 1100, 1101; Dec. Dig. § 589.*]

3. VENDOR AND PURCHASER (§ 189*)—RIGHTS OF PARTIES—ESTOPPEL.

A mere contract of sale does not estop the purchaser to deny the vendor's title, but a purchaser obtaining possession on the faith of the contract may not deny the vendor's title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 381–383; Dec. Dig. § 189.*]

On Motion for Rehearing.

4. SPECIFIC PERFORMANCE (§§ 12, 97*)—CONTRACTS ENFORCEABLE — CONTRACTS RELATING TO REAL ESTATE.

A contract to convey real estate may be specifically enforced at the suit of the purchaser, though, subsequent to the contract, he obtained an outstanding title, but he must tender to the vendor performance by paying the contract price, less what it cost to acquire the outstanding title.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 26–28, 37, 286–298; Dec. Dig. §§ 12, 97.*]

5. SPECIFIC PERFORMANCE (§ 123*) — CONTRACTS ENFORCEABLE — CONTRACTS RELATING TO REAL ESTATE.

A purchaser of real estate acquired an outstanding title, and then brought trespass to try title against the vendor, who obtained judgment. The purchaser did not, pending the action of trespass to try title, dismiss a suit for specific performance, and did not demand the return of the earnest money paid. The vendor, previous to the institution of the suit, had declared his intention not to comply with the contract. Held, that the purchaser did not, as a matter of law, abandon his right to specific performance, but the issue was for the jury.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 397–399; Dec. Dig. § 123.*]

6. EVIDENCE (§ 589*) — WEIGHT — TESTIMONY OF PARTY.

The testimony of a party to an action is not binding on the jury, where there are circumstances contradicting the testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. § 589.*]

Appeal from District Court, Carson County; C. E. Gustavus, Special Judge.

Action by J. A. Whittenberg against R. F. Groves. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

R. E. Taylor and W. T. Allen, both of Henrietta, for appellant. Veale & Davidson, of Amarillo, for appellee.

HALL, J. Appellee filed this suit in the district court of Hutchinson county January 7, 1910, to compel specific performance of a contract for the sale of land. The venue was changed to the district court of Carson county, where it was tried at the fall term, 1913.

The material allegations of appellee's petition are that on January 18, 1906, he obtained from one S. M. Hedgecoke, acting as the agent for one Arthur Cook, a contract set out in the petition, reciting the payment of $210 by appellee, and the promise to pay an additional sum of $790, and the further sum of $2,000 in four equal payments to be evidenced by notes bearing interest at the rate of 8 per cent. per annum from date. Appellee further alleges that thereafter, on February 10, 1906, he obtained direct from the appellant the following contract: "Received of J. A. Whittenberg the sum of $210.00, as part payment of the following described land, situated in Hutchinson county, Texas, and known as follows, to wit: Section No. 30, in block M—23, T. & C. Ry. Co., containing 640 acres of land; also all of section No. 6, in block R—2, D. & T. Ry. Co., containing 640 acres of land; and I hereby agree to make the said Whittenberg a good and perfect conveyance, conveying to him an absolute title to the same, save and except the claim of the state for purchase money, reserving a vendor's lien for the balance of the purchase price, to wit, four notes of $500.00 each, to become due and payable in one, two, three, and four years respectively after date, the balance of the cash payments to be paid when deed is delivered in the sum of $790.00. The condition of the within obligation is dependent upon my being able to perfect title held by me under deed of W. B. Ware, as administrator, and the compliance on the part of the said Whittenberg in the execution and delivery of the notes hereinbefore referred to and are to bear 8 per cent. interest per annum and payable at Shamrock, Texas. Witness my hand this 10th day of February, 1906." This contract was signed by both appellant and appellee, and witnessed by Ben H. Kelly.

It is further alleged, in substance, that at the time of the making of said contract, appellant was claiming title to the lands therein mentioned under a sale by one W. B. Ware, purporting to act as administrator and executor of the estate of C. J. Johnson, deceased, said transaction of date December 23, 1902, and that, by the terms of said contract, appellant bound himself to convey said lands to appellee, and, further, that if the title to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

said lands was not held by appellant at the date of said contract, then appellant bound himself to perfect his title under the Ware transaction, and, when same should be so perfected, to convey the same to appellee; that appellant's title to said land was good at the date of the making of said contract, and he was absolutely bound to convey the same; but that if the title was not good when said contract was made, that the same had, since said time, been perfected under the Ware transaction, and appellant was bound in either event to convey the same. Appellee further set up, as an estoppel against appellant's denying that he had title to said land under the Ware transaction, the fact that a trespass to try title suit between the parties hereto had been filed, and resulted in a judgment perfecting said title. Appellee further alleged a breach by appellant; that appellee was ready and willing to perform and other matters which we deem it unnecessary to set forth.

The material part of appellant's answer to the determination of the issues submitted by this appeal is that appellee, in the early part of 1911, secured quitclaim deeds from C. M. Johnson and the other heirs of C. L. Johnson and his wife, Vienna Johnson, and brought trespass to try title against the appellant on said title, and prosecuted said suit to a judgment, in which appellant prevailed, and, by reason of said fact, appellee had abandoned and repudiated the contract which forms the basis of this suit; and that judgment in the said trespass to try title suit was res judicata as to all matters at issue between the parties in this suit. It is also alleged that the appellant had himself abandoned and repudiated the contract.

After the testimony was introduced, the special judge trying the case gave a peremptory instruction to the jury to find for the plaintiff, and judgment was entered accordingly.

The case is submitted upon two assignments of error. By the first assignment it is insisted that, the defendant having pleaded that the contract had been mutually abandoned, and the undisputed evidence showing that the plaintiff had assumed an attitude of hostility to the contract, and had conducted a long lawsuit which in its very nature was a repudiation of the contract, the court should have held, as a matter of law, that the contract had been mutually abandoned and repudiated by both the plaintiff and defendant, and should have instructed a verdict in favor of defendant. The second assignment is that the court erred in peremptorily instructing the jury, because the evidence at least raised an issue of fact as to whether or not plaintiff had abandoned and repudiated the contract which he sought to enforce.

It appears from the record in the case that in the year 1900 C. L. Johnson purchased from the state of Texas four sections of land,

two of them being the land involved in this suit; that on September 25th of said year he, joined by his wife, Vienna Johnson, by quitclaim, conveyed the four sections to their son, C. M. Johnson; and that this deed was recorded in Hutchinson county December 19, 1900. C. L. Johnson died in August, 1901, and Vienna Johnson died in June, 1903. On December 23, 1902, one W. B. Ware, purporting to be the executor and administrator of the estate of C. L. Johnson, deceased, executed to appellant herein a deed to the four sections of land for a consideration of $2,200. It seems to be conceded that this deed was made without legal authority as administrator and executor on the part of said Ware. In January, 1906, appellee procured from one S. M. Hedgecoke, claiming to be the agent for Arthur Cook, the contract of January 18, 1906, first above set out, whereby appellee agreed to purchase the two sections of land in controversy. It seems that, at the time of the making of this contract, the said Cook was claiming some kind of an agreement or obligation whereby appellant herein was to convey to him the land in question. This contract was not introduced in evidence. After the contract of January 18th was executed, Hedgecoke stated to appellee that there would have to be some litigation, and that he could not obtain the title at the time, inquiring of appellee whether he would comply with the contract. In reply appellee stated that he would, if he could get a contract direct from appellant. Hedgecoke assented to this and appellee then procured the contract of February 10, 1906, from appellant. The matter remained in this condition until some time in the spring of 1909, when, according to the testimony of appellee, appellant absolutely refused to complete the contract, stating that John Johnson, one of the heirs of C. L. Johnson, had recovered one-eighteenth interest in the land; which released appellant from his obligation under the contract. The testimony is that at that time appellee told appellant he would attempt to force him to perform. On March 30, 1911, appellee filed suit in the district court of Hutchinson county, in the form of trespass to try title against appellant for the four sections of land. Appellant answered by plea of five years, plea of estoppel, and ratification against C. L. Johnson's heirs to contest the Ware sale. Upon a trial, the appellant prevailed in that suit. The proceedings in the trespass to try title suit were introduced in evidence in the trial of this case, and it appears therefrom that the contract here sued upon was in no way involved in the trespass to try title suit. No reference is made to it in the pleadings or evidence. The contention of appellee is that the cause of action set up by him in the instant case is altogether a different cause of action from that set up in the former suit, and is in no way inconsistent with the issues and judgment shown by the proceedings in the trespass to try title action.

[1] We think the court erred in peremptorily instructing a verdict for the appellee. The issues of abandonment of the contract and repudiation by appellee were issues of fact. It will be seen that the contract provides that appellant shall convey the two sections of land in question to appellee when he has perfected his right to the land under the Ware deed. The record fails to show that he had taken any steps to accomplish this end up to the time the suit in trespass to try title was filed by the appellee. While the evidence shows that appellee purchased the claim or interest of the Johnson heirs to the four sections, and filed suit in trespass to try title, it does not show conclusively that he had either abandoned or repudiated the contract of which he now seeks specific performance. The authorities cited by appellant do not sustain his contention that the filing of the trespass to try title suit was, as a matter of law, an abandonment and repudiation of the contract of sale. On the other hand, it appears that at no time did appellee demand a rescission of the contract of sale or the return of the $210 paid by him as earnest money, or. as a first payment upon the land, and his oral testimony is to the effect that he had not abandoned the contract, and never intended to repudiate it at any time, and as said abandonment and repudiation depend upon intent, and are issues of fact for the jury. Durham v. Breathwit, 57 Tex. Civ. App. 38, 121 S. W. 890; Rush v. Bank, 160 S. W. 609; Simpson v. McLemore, 8 Tex. 448; Hollingsworth v. Holshousen, 17 Tex. 41; M., K. & T. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745; Utah Mining & Mfg. Co. v. Dickert & Myers Sulphur Co., 6 Utah, 183, 21 Pac. 1002, 5 L. R. A. 259, and note.

[2] We agree with appellee in his proposition that the judgment rendered in the trespass to try title suit was not res judicata of the issues in this case. Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596; American F. L. & M. Co. v. MacDonell, 93 Tex. 398, 55 S. W. 738; Fowler v. Stoneum, 11 Tex. 511, 62 Am. Dec. 490; Manning et al. v. Green, 56 Tex. Civ. App. 579, 121 S. W. 721; Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195. We think the filing of that suit and its prosecution to final judgment is merely a fact which should be considered with all the other facts, declarations, acts, and circumstances surrounding the transaction tending to show whether or not the contract had been abandoned or repudiated, and that this issue should have been submitted to the jury.

[3] It is the general rule that a person who has entered into the possession of land under an executory contract of sale will not be permitted to deny his vendor's title, but the rule has no application to this case, for the reason that appellee never took possession of the land under the contract. As said in Page v. Bradford-Kennedy Co., 19 Idaho, 685, 115 Pac. 694, Ann. Cas. 1912C, and note, p. 406: "The contract [of sale] alone does not estop the purchaser to deny the vendor's title. As has been stated, the estoppel arises from the purchaser's having obtained the possession of the land on the faith of the contract. Clee v. Seaman, 21 Mich. 287."

Because of the action of the trial court in peremptorily instructing the jury, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

It is insisted in appellee's motion for rehearing that the sole and only evidence relied upon to show abandonment was the purchase by appellee of the Johnson claim of title and the act of appellee in filing and prosecuting to final judgment the trespass to try title suit based thereon, and that, because the judgment in that suit was not res judicata, the trial court was justified in peremptorily instructing the jury against the contention of appellant that the contract had been abandoned by appellee. We did not discuss the facts bearing upon the issues to any extent in the original opinion, because it is improper for us to do so where a case is remanded. It is necessary, however, for us to briefly discuss the effect of the evidence in passing upon this motion.

[4] The record shows that appellee acquired the outstanding title from the Johnson heirs. The acquisition of this title was the only thing which prevented appellant from performing the contract. As we understand the law, appellee had the right, upon obtaining this title, to demand of appellant that he convey to appellee whatever interest he may have previously held, and to tender to appellant performance by paying the contract price, less. what it had cost appellee to acquire the Johnson title. Instead of doing this, appellee filed suit upon a hostile claim.

[5, 6] A jury might have decided that this constituted, on the part of appellee, an abandonment of his right of action for specific performance. It is true that, notwithstanding the institution of the trespass to try title suit, appellee did not dismiss this suit, which had been previously filed for specific performance, nor did he demand the return of his earnest money, and it is also true that he testified without contradiction that he was always ready and willing to perform the contract. But it has been frequently held that the testimony of a party to a suit is not conclusive and binding upon the jury where there are facts and circumstances which tend to contradict his statements. Franklin v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 203; Burleson v. Tinnin, 100 S. W. 350; Heierman v. Robinson, 26 Tex. Civ. App. 491, 63 S. W. 657. The record further shows that, prior to the institution of this suit, according to the uncontradicted testimony of appellee, Groves had declared his intention not to com-

ply with the contract, which may in a measure furnish an excuse for the failure of appellee to demand specific performance of the contract after he had acquired the Johnson title; but we cannot so declare as a matter of law. The question arises: Why was hostile title asserted, rather than an effort made to obtain specific performance? This is a question of fact, and not of law. The facts may be sufficient to convince a jury that appellee also decided to abandon his rights in that direction, and rest his chances upon the trespass to try title suit alone. In the discussion of the issue by appellee in his motion, he loses sight of the question of intent. As said in a valuable new work which had just come to our hands: "Therefore in any case where a question of abandonment is involved, the important fact to be determined is: What was the intention of the person whose rights are claimed to have been abandoned?" Volume 1, Ruling Case Law, "Abandonment," p. 5. Further quoting from said authority: "As in other cases showing the ascertainment of a particular intent, direct evidence of an intent to abandon property or rights of property is not required, but may be inferred from all the facts and circumstances of the case which are competent to go to the jury as evidence by which that fact may be established." Id. p. 5. "Although doubtless the occasion may sometimes arise when the facts which constitute the evidence of abandonment are so clear and uncontradicted as to justify the court in instructing the jury as a matter of law that there has been an abandonment, yet in most cases the question of intent to abandon is to be ascertained by the jury from a consideration of all the facts and circumstances of the case." Id. p. 8.

We have fully considered appellee's second proposition, which is that, when one party to a contract is in default, he cannot have a rescission or defend against his suit on the contract on the ground of default of the other party. If this proposition is applicable to this case, it does not bear upon the question of abandonment. We do not agree with appellant that res judicata is the point upon which this case turns. A judgment in an action may or may not be res judicata. Still the intention of the plaintiff in filing and prosecuting the suit to judgment is altogether a different question. If we should admit that Groves defaulted, and that he refused to comply with the contract, still this may be one reason why appellee abandoned the contract, if he did. We do not believe we would be justified in holding, with appellee's contention, that, as a matter of law, his prosecution of the trespass to try title suit was not an abandonment, and, because the judgment in that suit was not res judicata, there were no facts to go to the jury under appellant's plea of repudiation, and the motion is therefore overruled.