## BLOUNT-DECKER LUMBER CO. v. MARTIN. (No. 1681.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 16, 1916.)

1. APPEAL AND ERROR ⬅═930(4)—REVIEW—VERDICT.

Through defendant's negligence in operating its locomotive a house belonging to defendant was fired, and in an action for the destruction of her household goods therein contained, there was evidence on the part of the plaintiff that defendant consented to plaintiff's occupation of the house as a subtenant. *Held*, that in view of such testimony, a judgment based on a verdict for plaintiff cannot be set aside on the ground that defendant owed plaintiff no duty, it being presumed that the jury found in plaintiff's favor on the contention that defendant consented to her occupancy.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3760, 3761; Dec. Dig. ⬅═930(4).]

2. EVIDENCE ⬅═588, 589—PROVINCE OF JURY—DISREGARDING TESTIMONY.

The jury may disregard testimony of either party or his witnesses.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2437, 2438; Dec. Dig. ⬅═588, 589; Witnesses, Cent. Dig. § 1164.]

3. RAILROADS ⬅═482(1)—ACTIONS—EVIDENCE—SUFFICIENCY.

In a suit against defendant for negligently firing house in which plaintiff was living, evidence *held* to warrant a finding that plaintiff was continuing to occupy the premises, which belonged to defendant, with its acquiescence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1730; Dec. Dig. ⬅═482(1).]

4. RAILROADS ⬅═470—FIRES—TRESPASS.

Where a lumber company owning houses occupied by its employés consented to an employé subletting his house to his sister, the sister was not a trespasser in the house, which was on the right of way of the lumber company, and the lumber company owed her the duty of exercising ordinary care in operating its locomotives so as not to fire the house and destroy her household goods.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1666; Dec. Dig. ⬅═470.]

5. RAILROADS ⬅═461—FIRES—NEGLIGENCE.

Where one occupying a house on right of way of railroad operated by lumber company knew that sparks escaping from the engine had started fires on different occasions, she was not guilty of contributory negligence in failing to remove her property from the house, having the right to assume that the company would not thereafter operate its locomotives so as to endanger her property.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1682; Dec. Dig. ⬅═461.]

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by Mrs. Essie Martin against the Blount-Decker Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

This was a suit by appellee against appellant to recover, as damages suffered by her, the value of certain household goods destroyed by fire, as the result, she claims, of negligence on the part of appellant in the operation over its line of railway of a locomotive engine without a proper spark arrester. The appeal is from a judgment for $300 in her favor. The sufficiency of the testimony to support findings involved in the judgment: (1) Of negligence on appellant's part as charged, if it owed appellee a duty to use care; and (2) that appellee was damaged as determined—is not questioned by any of the assignments. Appellant's contentions are: (1) That appellee was a trespasser on its property, and that in operating the engine as it did in the condition it was in it violated no duty it owed to her; (2) that if it violated a duty it owed to her, she was guilty of contributory negligence which deprived her of a right to recover of it; (3) that the risk from the fire which destroyed her property was one appellee had assumed. The circumstances of the case, so far as they relate to the contention stated, appear to be as follows: Appellant, a corporation, owned a locomotive engine which it operated over its line of railway used in connection with its lumber manufacturing business. It also owned a number of wooden dwelling houses situated near the track of said railway,

which it rented to its employés. One of these houses, situated about 127 feet from the railway track, was destroyed by fire kindled by cinders emitted from appellant's engine. At the time the fire occurred appellee, a widow, and her children and her mother, an invalid, it seems, resided in the house. Appellant claimed that appellee's occupancy of the house was unlawful, because she was there without its consent, it asserted, as a subtenant under her brother, one Bartholomew, to whom it had rented the premises at a time when he was its employé, but who had ceased to be its tenant. There was some conflict in the testimony as to the circumstances connected with the occupancy of the house by appellee. It seems that she was occupying another house at the time Bartholomew began to work for appellant, and that a man named Marshall was then occupying the house in question. Appellee testified:

"At the time my husband died I wasn't living in the house that burned later. We lived in another house then. I made a trade with Mr. Decker (appellant's manager) about moving into the house that burned; that is I talked with him about it. I asked Mr. Decker if it would be all right for Mr. Marshall (who then occupied the house in question) and me to swap houses. And he said it would be all right with him. I told Mr. Decker I would pay my brother $3 per month rent for the house, for my part of the rent. He told me that was all right, for he wanted the house I was living in then anyway. I told him I would pay my brother · $3 per month rent for the house I moved in, which was the house that burned. My brother wasn't living in the house that burned at the time I told Mr. Decker that. * * * Six dollars per month was the regular rent for this house, and I told Mr. Decker I would pay my brother $3. My brother was to pay the other $3 per month. I moved into the house with the understanding as I have just stated it. I paid my $3 per month rent all of the time I lived in the house, on up until it was destroyed by fire. * * * My brother and my mother kept house together before my husband died. * * * After my husband's death I kept house for my mother and brother. I did not move into the house with them, for my things were moved into the house before they moved into it. That was the house that burned that I am talking about now. We all moved into the same house, but I moved into it first, and then they moved there, and I kept house for them. I had my children in the house also, of course. I wouldn't say that I had charge of the house, but I was paying rent for it all right. * * * As to whether or not my brother had left me and had moved out of the house before it was destroyed, I will say that he wasn't at home when the house burned. He had left there just a while before then. He left me in charge of the house, I guess you would say. As to whether or not I had complete charge of the house, and my brother left me in complete charge of the house, all I could say is that he never said anything to me about that. My brother left some of his things in the house when he went off, and I was still paying him rent for it. He took some things—some clothes and the like—when he left. I guess you would say that I had charge of the house after my brother left there. It was my home at the time it was destroyed, and was not my brother's home then."

Decker denied agreeing with appellee that she might occupy the house with her brother, paying rent to him, and testified that

when her brother ceased to work for appellant, he notified him in writing to vacate the house within ten days thereafter. The notice, the testimony indicated, was given about two weeks before the fire occurred. With reference to the notice Decker testified:

"I know he received the written notice because he came to my office the next day or two afterwards, and had the notice in hand and wanted to know why I wanted him to vacate the house. And possibly one week or ten days after that I had another conversation with him about the matter. At that time he told me that, on account of the illness of his mother, he hadn't been able to move out of the house, but he said he had a job at Wells, and expected to move down there the next week. That was about Friday or Saturday of the week, and he told me he would try to move the next week down to Wells. I never gave Mrs. Martin (appellee) any notice to vacate this house. I never instructed anybody else to give her any such notice."

Decker further testified:

"I heard the plaintiff testify about a conversation she claims to have had with me about this house and the rent, etc., but I never had any such conversation with her at all. I didn't have any knowledge that she was paying her brother any rent for the house. · I didn't consent for her brother to subrent this house or any part of it to her or anybody else; nor did the Blount-Decker Lumber Company consent to anything of the sort."

On special issues submitted to them the jury found: (1) That the house was destroyed by fire from appellant's engine; (2) that appellant was guilty of negligence in operating the engine in the condition it was in; (3) that appellee's occupancy of the house was as a subtenant—"that is, she was renting from Bartholomew"—(4) that appellant agreed for her to live in the house; (5) that by the destruction by the fire of property belonging to her appellee was damaged in the sum of $300.

Norman, Shook & Gibson, of Rusk, for appellant. Perkins & Perkins, of Rusk, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The testimony showed that the house was destroyed by fire emitted from the engine because of the manner in which it was operated while equipped with an insufficient spark arrester. Whether appellant was guilty of negligence in so operating the engine or not depended upon whether it owed to appellee a duty to use care in equipping and operating it or not. Appellant insists it did not appear that it owed appellee such duty, because the testimony showed, and the jury found, that appellee's occupancy of the house was as a subtenant of her brother John Bartholomew, and it did not appear, and the jury did not find, that she was such tenant with its consent. The argument is that it therefore appeared that appellee was a trespasser on its property to whom it owed no duty except not to willfully injure her.

We do not agree that the jury did not find that appellee was a subtenant with appel-

lant's consent. She testified that appellant's manager, Decker, agreed that she might occupy the house with Bartholomew, paying him rent therefor. Decker testified that he did not so agree; that nothing had ever been said to him by any one about appellee's occupying the house either as a subtenant or otherwise. In the light of this testimony, which was all there was on that issue, we think the finding of the jury that appellant agreed that appellee might live in the house must be regarded as determining the conflict in her favor and as a finding that appellant did consent that she might occupy the house as a subtenant. If she was such a tenant with appellant's consent at the time the fire occurred, there can be no doubt appellant owed her a duty to use care in the equipment and operation of its engine.

[2, 3] Appellant insists, however, that if the finding of the jury should be so construed, it was unauthorized, because, it asserts, it appeared from a great preponderance of the testimony that if appellee was ever such a subtenant she ceased to be such before the fire occurred. The contention is based on testimony of Decker alone, but not contradicted, that Bartholomew, about two weeks before the fire occurred, ceased to be an employé of appellant; that it was "tacitly understood" that when a person occupying one of appellant's houses quit working for it, he would at once vacate the house; and that he (Decker) at the time Bartholomew ceased to work for appellant notified him in writing to vacate the house within ten days from the date of such notice. The argument is that Bartholomew's occupancy of the house after the expiration of the ten days was unlawful, and that appellee's occupancy thereof thereafterwards likewise was unlawful, because her right to do so as Bartholomew's tenant ceased when he ceased to be appellant's tenant.

But we think the finding of the jury is supportable on either one of two theories: (1) That, as they had a right to do (Coats v. Elliott, 23 Tex. 613; Dubinski Electric Works v. Lang Electric Co., 111 S. W. 169; Ins. Co. v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 203), the jury disregarded Decker's testimony that he had notified Bartholomew to vacate the house; (2) that they thought such notice had been given, but also thought from Decker's testimony that he had tacitly agreed with Bartholomew that he might occupy the house until the condition of his mother's health permitted him to move her therefrom.

The jury might have found from the testimony that the fire occurred Tuesday of the week following the week during which Decker had the conversation with Bartholomew referred to in Decker's testimony set out in the statement above. The jury might have believed that when Bartholomew explained to Decker that he had not moved out of the house because of the illness of his mother, but expected to move out "the next week," Decker, by not then objecting to the delay, tacitly agreed that Bartholomew might continue to occupy the house until his mother's health improved, or, anyhow, during the "next week."

[4] If the jury might have so found from the testimony, then clearly, we think, it cannot be held that their finding that appellant agreed that appellee might live in the house should not be referred to the time when it was destroyed by fire. If appellee was in the house as a subtenant of her brother with appellant's consent, as, we think, the jury must be held to have found she was, on testimony authorizing it, then she was not, of course, a trespasser as claimed by appellant, and appellant owed her the duty to use ordinary care in equipping and operating its engine.

In this view of the record, it is not necessary to inquire whether, had it appeared from the testimony and findings that appellee was a trespasser, appellant would have owed her any other duty than the duty not to willfully injure her, and, if it did not, whether the testimony was sufficient to support a finding that in operating its engine as it did appellant violated its duty not to "willfully" injure her.

[5] It appeared from the testimony that the fire emitted from the engine was not, in the first instance, communicated to any property belonging to appellee on the premises, but to the roof of the house. If, therefore, appellee's occupancy of the house was as a subtenant with appellant's consent, as, we have seen, was determined by the jury, we do not think the testimony made an issue as to contributory negligence or "assumed risk" on her part. The mere fact that she knew sparks escaping from the engine had started fires on other occasions did not make it her duty to move her property from the house in order to avoid the loss of same. Notwithstanding she might have known that appellant was guilty of negligence on those occasions, she was not bound to assume it would continue to operate the engine in the condition it was then in, or in the manner it then operated it, and so endanger her property. On the contrary, she had a right to assume it either would repair the defect in the engine or so operate it as to avoid injury to her property.

The judgment is affirmed.