## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. BRIGHAM. (No. 2587.)*

(Court of Civil Appeals of Texas. Texarkana. June 8, 1922. Rehearing Denied June 29, 1922.)

**1. Railroads ⟺350(1)—Pedestrian's presence at public crossing held for jury.**

Evidence as to whether deceased pedestrian was going across defendant's railroad at a public crossing at the time she was struck by a train *held* sufficient to go to the jury, though the engineer and fireman testified that she was on the track at a point about 50 feet from the crossing.

**2. Railroads ⟺350(13)—Contributory negligence of pedestrian held for jury.**

In an action for the death of a pedestrian traveling on a road crossing defendant's railroad, *held*, that question of her contributory negligence was for the jury.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Holsey Brigham against the St. Louis Southwestern Railway Company of Texas. From judgment for plaintiff, defendant appeals. Affirmed.

The action is by appellee to recover damages for the alleged wrongful death, of his wife. The wife had spent the night with her parents, and in returning to her own home on the next morning she was struck and instantly killed by the passenger train. The injury occurred at about 5:20 a. m. of August 2, 1920. The petition alleged that—

"In traveling from the home of her father and mother to her own home, it became necessary for her (the deceased) to cross the said railroad, and while on the said crossing she was struck by the engine of the defendant's passenger train."

The grounds of negligence alleged are: (1) The failure of the operatives of the train to give the statutory signals for public crossings; (2) that there is a sharp curve at the point where the railroad crosses the public road, and the view of the approaching train is obstructed by the location of houses, and the operatives of the train failed to use ordinary care in operating the train to avoid injury to persons likely to be upon the crossing; (3) that the train was negligently operated at a dangerous rate of speed, and the operatives negligently failed to keep a proper lookout for persons liable to be on the crossing. The defendant filed a general denial, and specially pleaded that the deceased was not at the public crossing at the time she was struck and killed by the train, but that she was a trespasser on the track away from the crossing and without any reason or necessity for her being there; and further generally and specially pleaded contributory negligence. The case was submitted to the jury on special issues, and the jury answered all the questions favorably to appellee. The jury made the following findings of fact:

"(1) That the deceased was on the road crossing at the time she was struck by the defendant's train.

"(2) That the defendant's employés in charge of said engine did not blow the whistle nor ring the bell at a point at least 80 rods distant from the crossing where the deceased was alleged to have been killed, neither did they keep the bell ringing until the crossing was passed.

"(3) That the defendant's employés in charge of said engine, after discovering the deceased upon or near the crossing, by the exercise of ordinary care could have warned her of the approaching train in time for her to get off of the track and avoid the accident.

"(4) That said employés did not exercise ordinary care after discovering deceased upon the track to warn her of the approaching train in time to have enabled her to get off of the track and avoid the accident.

"(5) That the failure to sound· the crossing signal and ring the bell was the proximate cause of the deceased being struck and killed.

"(6) That the employés were guilty of negligence in failing to warn her of and give her warning of the approach of the train after discovering deceased on or near the crossing, and that such negligence was the proximate cause of her injury and death.

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction October 25, 1922.

"(7) That the deceased exercised ordinary care for her own safety in undertaking to cross or go upon the defendant's track, and that she did not discover the approaching train in time to have gotten off the track and avoid the injury."

The railroad track runs in the general direction of east and west. A public road, running north and south, crosses the track. There is a curve in the railway track, extending about 300 feet, on the east as it approaches the crossing. A short distance from the crossing the public road, on the north side, begins to turn and run to the crossing in a southwesterly direction. At the crossing and on the east and west sides thereof there are located cattle guards, and the railway track is fenced on both sides. The distance between the two cattle guards is 62 feet. There is a mail crane located near the railway track about 120 feet west of the crossing. The deceased had gone, the night before the injury, to her mother's home to spend the night. She was in an advanced state of pregnancy, and within 10 days, according to computed time, of delivery. The next morning about 5 o'clock she started back to her own home. Before leaving she put on a pair of her brother's shoes. She was walking; and owing to her condition she could not walk fast, but walked very slowly. The mother's home is located about 250 yards north of the crossing and a short distance west of the public road. The home of the appellee and his wife is located 125 feet south of the crossing and a short distance east of the public road. The passenger train, about 45 minutes late, was going west at the speed of 35 miles an hour. The engine of the train struck and killed the deceased about 5:20 a. m. Whether she was killed at and on the public crossing, or whether at the time she was struck and killed she was down the track and walking on the track west of the crossing, is a disputed issue of fact. The jury made the finding that deceased was on the public road crossing at the time she was struck and killed. We conclude that there is evidence warranting the jury finding. There is evidence warranting the further jury findings that the deceased was not guilty of contributory negligence, and that the operatives of the train were guilty of negligence in failing to give the statutory signals or warning of the approach of the train, as pleaded, and that such negligence was the proximate cause of the injury.

B. F. Crosby, of Greenville, and E. B. Perkins, of Dallas, for appellant.

Evans & McCoy, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). The points which appellant presents and which are raised by the assignments are:

(1) "Where a person is walking upon a railway track in the direction of an approaching train and remains on the track until she is struck and killed by the train, she is guilty of contributory negligence as a matter of law." (2) "Where the deceased was walking upon the railway track in the direction of an approaching train, the only duty which the operatives of the train owe to her is to use ordinary care to discover that she is not going to get off the track, and after discovering her perilous condition to use all the means at hand to stop the train to avoid injury." (3) That where the inference from the evidence is irresistible that the deceased went heedlessly on the track in front of a fast approaching train, a peremptory instruction should have been given in favor of defendant upon the ground of contributory negligence.

The first two propositions are based upon the contention:

"That the undisputed evidence showed that the deceased at the time she was struck and killed was on the track west of the public road crossing, from between 20 to 100 feet, and there was no testimony showing that she was on said crossing at the time she was struck and killed, or at a point where defendant owed her the duty of keeping a lookout to discover her."

The liability of the appellant in this case turns, we think, upon the fact of whether the deceased was struck and killed while at or on the public crossing, or that of whether at the time she was struck and killed she was standing upon the track facing the approaching train at a point west and distant from the crossing. If she was struck and killed on the crossing, then the evidence supports the further findings of the jury that the deceased was not guilty of contributory negligence and that the negligence of the appellant in failing to give statutory signals and warning proximately caused the injury and death. The engineer testified that he first saw the deceased when the engine was about 250 feet east of the crossing, and that at the time she was standing in the middle of the track about 50 feet west of the crossing, facing towards the approaching engine. He further testified:

"After I discovered her there, I expected her to step off the track. When I saw that she was not going to do that, I blew the whistle and put on the brakes. At that time the train was going between 30 and 35 miles an hour. After I sounded the alarm and put on the brakes, the train ran about two coach lengths before it stopped. I was running with the headlight shining in front."

The fireman testified that when he first saw the deceased the train was about 750 feet east of the crossing, and that when the train had run about 150 feet he then called the engineer's attention to her. At the time he saw deceased she was, as he says, "somewhere near the mail crane, something like

.100 feet west from the stock gap; she was standing up in the middle of the track, facing us. * * * The train knocked her something like 20 or 25 feet." The witness Skinner testified that he saw the deceased, before the train came along, walk a short distance down the track west from the crossing and then turn and walk back toward the crossing. He did not see her struck by the train, or immediately before she was struck, and did not know at what point she was struck. The body of the deceased was found lying within 5 or 6 feet east of the mail crane. The mail crane was distant 120 feet west of the crossing. As against this evidence, though, certain circumstances were offered to show that the deceased was at the crossing at the time of her death. The mother testified that the deceased started from her home down the public road towards the crossing, and that from the time she left the house until the train whistled only 15 or 20 minutes had elapsed. She further testified that the deceased in her condition could only walk slowly, and that she did walk 'slowly, and that it would require 15 or 20 minutes for her to walk the 250 yards from her home to the crossing. One of the shoes that deceased had worn was found at the time on a cross-tie about 7 feet west from the cattle guard. The shoe "appeared to have been pinched by the wheel." The justice of the peace, making an investigation at the time, said:

"I did notice the ground east, and I could see some little sign that something might have been dragged a few feet. I would think that was only a few feet east of where the shoe appeared to have been pinched by the wheel, 4, 5, or 10 feet perhaps."

The other shoe was found near the body. The witness White testified that, at the time, he saw signs on the ground indicating that "the train dragged her when it first struck her, across the cattle guard." The witness Annie Williams testified:

"Before I heard or knew that the train was coming, I had seen deceased. She was 50 or 60 yards from the crossing, going south towards her home, and was in the public road."

[1] No motive or reason appears why the deceased should leave the crossing and go down the track west. An inference of fact is that deceased in leaving her mother's home was anxious to reach her own home and was traveling as her condition permitted down the road, and had no occasion or reason to depart from the traveled road. There was no pathway inside the fenced right of way to lead her to go there. The injuries on her body, caused by being struck by the engine, were on her left side, which would fairly indicate that she was facing south at the time she was struck by the engine coming west. The public road runs north and south, and her home was south. If the deceased was struck while she was on the crossing by a train going 30 or 35 miles an hour, it is not an impossible thing, but probable, that the body when struck may have been caught on the pilot beam of the engine and carried the 115 feet from the crossing near to the mail crane. There is not an entire absence, we think, of reasonable circumstances sufficient to make an issue of fact for the jury to decide as to whether or not the deceased was going across the railroad at the public crossing at the time she was struck. It was in the province of the jury to decide this issue, as the facts and circumstances made it. The testimony of the engineer and fireman was not conclusive, as a matter of law, of the issue, for, under the rule, credibility of witnesses, especially those interested in the case, is a matter for the consideration of the jury. Maccabees v. Johnson (Tex. Civ. App.) 143 S. W. 718.

[2] As to whether or not the deceased was guilty of contributory negligence, under all the facts and circumstances, was, a question for the jury. There are no conclusive circumstances showing, as a matter of law, that the deceased heedlessly and with full knowledge of the approaching train stepped on the track in front of it.

The judgment is affirmed.